IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 9, 2014 Session

**STATE OF TENNESSEE v. SHANICE L. DYCUS**

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Montgomery County**
**Nos. 41100550, 41101052, 41200440, & 412200479     John H. Gasaway, III, Judge**

---

**No. M2012-02297-SC-R11-CD - Filed January 23, 2015**

---

We granted review in this case to determine whether the mandatory minimum service requirement of Tennessee Code Annotated section 39-17-432(c) (2010) (the "Drug-Free School Zone Act") renders offenses under that act ineligible for judicial diversion. After a thorough review of the record and the applicable law, we hold that the mandatory minimum service requirement of the Drug-Free School Zone Act does not render offenses under that act ineligible for judicial diversion. Although the trial court failed to adequately address the appropriate factors on the record, based on our own de novo review, we hold that the record demonstrates that the trial court properly denied the Defendant's request to be placed on judicial diversion. Accordingly, we reinstate the trial court's judgments.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Criminal Appeals Affirmed in Part and Reversed in Part;**
**Judgments of the Circuit Court Reinstated**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and CORNELIA A. CLARK, GARY R. WADE, and HOLLY KIRBY, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Joseph F. Whalen, Acting Solicitor General; Rachel E. Willis, Senior Counsel; Michelle Consiglio-Young, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Kimberly Lund, Assistant District Attorney General, for the appellant, State of Tennessee.

Roger E. Nell, District Public Defender, and Charles S. Bloodworth, Sr., Assistant Public Defender, Clarksville, Tennessee, for the appellee, Shanice L. Dycus.

# OPINION

## Facts and Procedural Background

Shanice L. Dycus ("the Defendant") pleaded guilty to one count of possession of marijuana in excess of .5 ounces with intent to sell or deliver within 1,000 feet of a school zone, four counts of simple possession of marijuana, two counts of evading arrest, two counts of possession of drug paraphernalia, and three counts of criminal trespass. The plea agreements left the Defendant's sentence to be determined by the trial court. The State's summary of the facts at the plea agreement hearing revealed the following:

On November 19, 2010, a police officer on patrol in the Lincoln Homes housing projects in Clarksville noticed the Defendant behaving suspiciously. The Defendant was then under a criminal trespass order from the Clarksville Housing Authority to stay away from the Lincoln Homes housing projects. When the officer attempted to question the Defendant, she fled, pulling several objects from her pockets and discarding them onto the ground. The objects later were discovered to be five small bags of marijuana. Upon the Defendant's arrest, the officer discovered $2,000 in cash in the Defendant's jacket pocket, as well as a cell phone containing several messages related to the sale of marijuana. The Defendant was charged with simple possession of marijuana, criminal trespass, and evading arrest.

On March 18, 2011, two officers again noticed the Defendant trespassing in the Lincoln Homes complex. When they apprehended her, the officers recovered a small bag of marijuana that the Defendant attempted to discard. The Defendant was charged with simple possession of marijuana and criminal trespass.

On April 21, 2011, an officer stopped the Defendant's vehicle for speeding. The Defendant consented to a search of her vehicle, and the officer discovered three bags of marijuana. The marijuana later was weighed and was determined to weigh approximately three ounces. The location at which the Defendant was stopped was within 1,000 feet of the property of Kenwood Elementary School, Kenwood Middle School, and Kenwood High School. The Defendant was charged with possession of marijuana in excess of .5 ounces with intent to sell or deliver within 1,000 feet of a school zone and possession of drug paraphernalia.[1]

On September 13, 2011, the Defendant again was spotted trespassing on a Clarksville Housing Authority property. The Defendant attempted to run from the officers and

_____

[1] According to the summary of the facts contained in the record, the paraphernalia giving rise to the charge were the bags used to hold the marijuana.

eventually was apprehended. The officers conducted a search incident to the Defendant's arrest and discovered a set of digital scales and a small amount of marijuana on the Defendant's person. The Defendant was charged with simple possession of marijuana, possession of drug paraphernalia, evading arrest, and criminal trespass.

Finally, on May 1, 2012, an officer witnessed the Defendant fail to stop at a stop sign. As a result of that encounter, the officer discovered a small bag of marijuana in the back seat of the Defendant's car.

As a result of the Defendant's subsequent guilty plea, a sentencing hearing was held on July 31, 2012. The presentence report was admitted into evidence. The Defendant testified that she was twenty years old at the time of the sentencing hearing and eighteen years old at the time of the first arrest in the instant case. The Defendant testified that she had graduated from high school and already had begun attending college classes online by the time of the hearing. She confirmed that she had no prior convictions. She also confirmed that she was asking the trial court to place her on judicial diversion.

The trial court questioned whether the offense of possession with intent to sell or deliver within 1,000 feet of a school zone pursuant to section 39-17-432(b) of the Drug-Free School Zone Act was eligible for judicial diversion in light of the mandatory minimum service requirement of section 39-17-432(c). See Tenn. Code Ann. § 39-17-432(c) ("[A] defendant sentenced for a violation of subsection (b) shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence."). The trial court continued the hearing in order to allow investigation into whether the Defendant was eligible for judicial diversion. On August 2, 2012, the trial court resumed the sentencing hearing. A judicial diversion eligibility form indicating that the Defendant was eligible for diversion was entered into the record. Following further discussion on the question of eligibility for diversion, the trial court again ordered that the case be continued in order to obtain an opinion from the Tennessee Attorney General regarding the question of the Defendant's eligibility for diversion in light of section 39-17-432(c).

The sentencing hearing resumed again on September 6, 2012. Defense counsel reported that the Tennessee Attorney General declined to offer an opinion at the current stage in the Defendant's case. Therefore, the trial court proceeded to sentencing. The trial court reasoned that offenses under the Drug-Free School Zone Act are not included in the list of offenses for which judicial diversion specifically is prohibited. See Tenn. Code Ann. § 40-35-313(a)(1)(B) (2010). The trial court further noted that "nowhere in the school zone sentence does it refer to . . . a term of diversion or that diversion is prohibited for an offense committed within a school zone." Based on that reasoning, the trial court concluded that the

Defendant was eligible for judicial diversion. As a result, the trial court proceeded to consider whether the Defendant was a good candidate for judicial diversion.

The Defendant again testified. The Defendant stated that she no longer sold drugs and that she previously only sold marijuana because she was "[h]anging around the wrong people." She was living with her mother at the time of sentencing. She stated that she had not been arrested or charged with any new crimes since the last offense in the instant case. She was pursuing a college degree in business management. In response to questioning by the trial court, the Defendant stated that she had attempted to get a job but had been unsuccessful.

In considering whether to grant judicial diversion, the trial court first noted that the Defendant was "a very young person" when she committed the offenses in question. However, the trial court found that the Defendant showed a "complete disrespect for the law and lack of understanding of the wrongfulness of [her] actions" when she continued to commit drug related offenses even after multiple arrests and court appearances. Based on these findings, the trial court reasoned that there was a low likelihood that the Defendant would be rehabilitated by judicial diversion. The trial court stated that it was not convinced that the Defendant was remorseful and characterized the Defendant's repeated offenses as "flagrant" and as having "the look of a seasoned criminal." Accordingly, the trial court denied the Defendant's request for judicial diversion.

Therefore, the trial court then sentenced the Defendant to two years on her conviction for possession of marijuana with intent to sell or deliver within 1,000 feet of a school zone; eleven months and twenty-nine days for each of the Defendant's convictions for simple possession of marijuana, criminal trespass, and possession of drug paraphernalia; and thirty days on each of the Defendant's convictions for evading arrest. The trial court ordered that all of the Defendant's sentences run concurrently for a total effective sentence of two years. Initially, the trial court ordered that the Defendant's sentences be served on probation. However, after the trial court was reminded of the mandatory minimum service requirement of the Drug-Free School Zone Act, the trial court ordered that the Defendant's sentences be served in confinement.

On direct appeal, the Court of Criminal Appeals reversed the trial court's denial of judicial diversion. See State v. Shanice L. Dycus, No. M2012-02297-CCA-R3-CD, 2013 WL 5371957, at *6-7 (Tenn. Crim. App. Sept. 25, 2013). The Court of Criminal Appeals first concluded that the Drug-Free School Zone Act and the judicial diversion statute were "not in conflict." Id. at *6. In reaching this conclusion, the appellate court reasoned:

The plain language of the diversion statute makes it clear that a person granted judicial diversion is not convicted of an offense because a judgment of guilt is never entered. See Tenn. Code Ann. § 40-35-313(a)(1)(A). The mandatory minimum sentence requirement of section 39-17-432 is not triggered until a judgment of guilt is entered. The paramount rule of statutory construction "is to ascertain and give effect to legislative intent without broadening the statute beyond its intended scope." Carter v. Bell, 279 S.W.3d 560, 564 (Tenn. 2009) (citing State v. Sherman, 266 S.W.3d 395, 401 (Tenn. 2008)). Courts "must always begin with the words that the General Assembly has chosen and must give these words their natural and ordinary meaning." Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 527 (Tenn. 2010). It is within the General Assembly's discretion to determine which offenses it deems ineligible for diversion, and the General Assembly has not done so in this instance. Irrespective of whether the omission of this offense was the result of inadvertence or intention, we cannot, and will not, read into the statutes an exclusion not specifically stated therein. Therefore, we conclude that the Defendant was a "qualified defendant" for diversion purposes.

Id.

The Court of Criminal Appeals further held that the trial court failed to consider and weigh on the record all of the relevant factors in denying judicial diversion and, therefore, remanded the case for reconsideration. Id. at *6-7 (citing State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)). In so doing, the appellate court declined to apply the standard of review articulated by this Court in State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012), an abuse of discretion accompanied by a presumption of reasonableness, and instead applied the more stringent procedural requirements of Electroplating and Parker.[2] Shanice L. Dycus, 2013 WL 5371957, at *7. Subsequently, the State filed a petition to rehear pursuant to Rule 39 of the Tennessee Rules of Appellate Procedure, which the Court of Criminal Appeals denied. See State v. Shanice L. Dycus, No. M2012-02297-CCA-R3-CD, 2013 WL 6001933, at *3 (Tenn. Crim. App. Nov. 12, 2013). On May 15, 2014, we granted the State's application for permission to appeal.

---

[2] As discussed herein, the Court of Criminal Appeals filed its opinion in the instant case prior to our opinion in State v. King, 432 S.W.3d 316, 322-29 (Tenn. 2014), in which we held that the abuse of discretion standard accompanied by a presumption of reasonableness is the appropriate standard of review of a denial of judicial diversion.

**Analysis**

*Eligibility for Judicial Diversion under the Drug-Free School Zone Act*

We turn first to the State's assertion that the mandatory minimum service requirement of the Drug-Free School Zone Act renders offenses committed under that act ineligible for judicial diversion. Issues involving statutory construction present questions of law which we review de novo, with no presumption of correctness. State v. Springer, 406 S.W.3d 526, 532-33 (Tenn. 2013); State v. Marshall, 319 S.W.3d 558, 561 (Tenn. 2010); State v. Wilson, 132 S.W.3d 340, 341 (Tenn. 2004). The role of this Court in statutory interpretation is to assign a statute the full effect of the legislative intent without restricting or expanding the intended scope of the statute. Springer, 406 S.W.3d at 533; Marshall, 319 S.W.3d at 561. In doing so, we must look to the plain language of the statute to determine the intent of the legislature. State v. Jennings, 130 S.W.3d 43, 46 (Tenn. 2004). That is, we must presume that "every word in the statute has meaning and purpose and should be given full effect if the obvious intent of the General Assembly is not violated by so doing." Marshall, 319 S.W.3d at 561 (quoting Larsen-Ball v. Ball, 301 S.W.3d 228, 232 (Tenn. 2010)). When the language of a statute is clear and unambiguous, "the legislative intent shall be derived from the plain and ordinary meaning of the statutory language." Wilson, 132 S.W.3d at 341 (citing Carson Creek Vacation Resorts v. Dep't of Revenue, 865 S.W.2d 1, 2 (Tenn. 1993)). However, if the language of a statute is ambiguous, we must look to the entire statutory scheme and rely upon well-established canons of statutory construction in order to ascertain the legislative intent. Marshall, 319 S.W.3d at 561; Wilson, 132 S.W.3d at 341.

In its brief before this Court, the State argues that the Drug-Free School Zone Act and the judicial diversion statute are in conflict. According to the State, "[b]ecause the [Drug-Free School Zone Act] requires service in confinement of at least the minimum allowable sentence in the defendant's appropriate sentencing range, that requirement is controlling over the general judicial diversion statute."

Possession with intent to sell or deliver between .5 ounces and ten pounds of a Schedule VI controlled substance such as marijuana constitutes a Class E felony. See Tenn. Code Ann. § 39-17-417(g)(1) (2010). The relevant provisions of the Drug-Free School Zone Act provide:

> (b)(1) A violation of § 39-17-417, or a conspiracy to violate the section, that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park shall be punished one (1)

classification higher than is provided in § 39-17-417(b)-(i) for such violation.

. . . .

(c) Notwithstanding any other provision of law or the sentence imposed by the court to the contrary, *a defendant sentenced for a violation of subsection (b) shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence.* Any sentence reduction credits the defendant may be eligible for or earn shall not operate to permit or allow the release of the defendant prior to full service of the minimum sentence.

Tenn. Code Ann. § 39-17-432(b)(1), (c) (emphasis added). Accordingly, the Defendant's offense was elevated under the Drug-Free School Zone Act ("Act") to a Class D felony, and, should she be sentenced under that Act, the Defendant would be required to serve at least two years' confinement. See id. § 40-35-111(b)(4) (2010).

With the mandatory minimum service provision of the Drug-Free School Zone Act, "the General Assembly has declared specifically and unambiguously that defendants being sentenced for committing drug offenses in a school zone shall serve the entire minimum term of years in the defendant's sentencing range." Davis v. State, 313 S.W.3d 751, 763 (Tenn. 2010). Accordingly, we have held that defendants sentenced under the Act to the minimum term in their sentencing range "will serve literally 100% of their sentences," without the benefit of parole or sentence reduction credits. Id. at 764; see also State v. Smith, 48 S.W.3d 159, 173 (Tenn. 2000) (holding that the Drug-Free School Zone Act necessarily "precludes sentence reduction credits, parole, or early release due to overcrowding"). Likewise, a defendant sentenced under the Act, required to serve the entire term of the applicable minimum sentence, clearly would be ineligible for alternative sentences in lieu of confinement such as probation, see Tenn. Code Ann. § 40-35-303 (2010 & 2014), or community corrections, see id. § 40-36-106 (2010 & 2014). See also Tenn. Code Ann. § 40-35-104(c) (2010 & 2014).

Judicial diversion, however, is a unique legislative construct separate and distinct from such alternative sentences. "Judicial diversion is a form of 'legislative largess' available to qualified defendants who have entered a guilty or nolo contendere plea or have been found guilty of an offense without the entry of a judgment of guilt." State v. King, 432 S.W.3d 316, 323 (Tenn. 2014) (footnote omitted) (quoting State v. Schindler, 986 S.W.2d 209, 211 (Tenn. 1999)). Under Tennessee Code Annotated section 40-35-313(a)(1)(A), the trial court "may defer further proceedings against a qualified defendant and place the defendant on probation upon such reasonable conditions as it may require without entering a judgment of guilty." The decision of whether to grant or deny judicial diversion is

entrusted to the sound discretion of the trial court. See Tenn. Code Ann. § 40-35-313(a)(1)(A); King, 432 S.W.3d at 323.

Upon successful completion of the probationary period under judicial diversion, "the court shall discharge the person and dismiss the proceedings against the person." Tenn. Code Ann. § 40-35-313(a)(2). Following such a dismissal, a defendant may seek to have her record expunged, thereby "restor[ing] the person, in the contemplation of the law, to the status the person occupied before the arrest or indictment or information." Tenn. Code Ann. § 40-35-313(b); see also Schindler, 986 S.W.2d at 211. However, should the defendant violate the terms of her probation pursuant to judicial diversion, "the court may enter an adjudication of guilt and proceed as otherwise provided." Tenn. Code Ann. § 40-35-313(a)(2).

It is well-settled that the decision to grant judicial diversion and the judicial diversion probationary period that results do not constitute a sentence. See King, 432 S.W.3d at 324 ("[T]he conditional probationary period incident to the grant of judicial diversion does not qualify as a sentence per se."); State v. Turco, 108 S.W.3d 244, 248 (Tenn. 2003) (rejecting argument that judicial diversion constitutes a sentence under the Tennessee Rules of Criminal Procedure); State v. Messer, No. E2013-00647-CCA-R3-CD, 2014 WL 259706, at *3 (Tenn. Crim. App. Jan. 22, 2014) ("Judicial diversion, is not now, and never has been, a sentence . . . ."); State v. Patel, No. M2012-02130-CCA-R3-CD, 2013 WL 3486944, at *8 (Tenn. Crim. App. July 10, 2013) (Witt, J., concurring) ("Our case law is clear that a judicial diversion term is not a sentence under the terms of the Sentencing Act."); Alder v. State, 108 S.W.3d 263, 267 (Tenn. Crim. App. 2002) ("The judicial diversion probationary period is not a sentence nor is it punishment."). Rather, "[t]he grant or denial of judicial diversion is a *decision to either defer or impose a sentence*." King, 432 S.W.3d at 324-25 (emphasis added). Indeed, under the judicial diversion statute, the grant or denial of judicial diversion takes place after a defendant "is found guilty of or pleads guilty or nolo contendere to the offense" but "without entering a judgment of guilty." Tenn. Code Ann. § 40-35-313(a)(1)(A), (a)(1)(B)(i).

Therefore, under the plain language of the judicial diversion statute, a grant of judicial diversion precludes the entry of a judgment of guilt, and "[a] sentence may be imposed only after the individual is found to have violated his or her probation." King, 432 S.W.3d at 323; see also Tenn. Code Ann. § 40-35-313(a)(2) (stating that only after the terms of probation are violated may the court "enter an adjudication of guilt and proceed as otherwise provided"); State v. Soller, 181 S.W.3d 645, 650 (Tenn. 2005) (holding that, because judgments of guilty had been entered, "the trial court was precluded from imposing judicial diversion as the [judicial diversion] statute requires that it is only available 'without entering a judgment of guilty'") (citation omitted); Turco, 108 S.W.3d at 248 (holding that judicial

diversion is not available as a sentence reduction under Rule 35(b) of the Tennessee Rules of Criminal Procedure because judicial diversion must take place before entering a judgment of guilty); State v. Norris, 47 S.W.3d 457, 461 (Tenn. Crim. App. 2000) ("[T]he guilty plea which results in an order of judicial diversion is not consummated into a judgment of conviction, unless the defendant breaches the conditions of his diversion/probation."); State v. Vasser, 870 S.W.2d 543, 547 (Tenn. Crim. App. 1993) ("[J]udicial diversion necessarily precludes the entry of a judgment of guilty . . . ."). Accordingly, a defendant who has been granted judicial diversion and placed on a judicial diversion probationary period has not yet been sentenced.

In support of its argument, the State relies on State v. Vasser, 870 S.W.2d 543 (Tenn. Crim. App. 1993). In Vasser, the Court of Criminal Appeals concluded that the mandatory minimum service provision of the statute governing sentencing for driving under the influence ("DUI") at the time rendered a defendant ineligible for judicial diversion. Vasser, 870 S.W.2d at 545-47. That statute stated:

No person charged with violating the provisions of §§ 55-10-401 – 55-10-404 [DUI] shall be eligible for suspension of prosecution and dismissal of charges pursuant to the provisions of §§ 40-15-102 – 40-15-105 [pretrial diversion] and 40-32-101(a)(3)-(c)(3) [destruction of criminal records] or for any other pretrial diversion program nor shall any person convicted under such sections be eligible for suspension of sentence or probation pursuant to § 40-21-101 [repealed probation provision] or any other provision of law authorizing suspension of sentence or probation until such time as such person has fully served day for day at least the minimum sentence provided by law.

Tenn. Code Ann. § 55-10-403(b)(1) (Supp. 1992).[3]

In Vasser, the court analyzed the meaning of the term "convicted" within the context of section 55-10-403(b)(1) and recognized that there were two distinct meanings of the term. Vasser, 870 S.W.2d at 545; see also Rodriguez v. State, 437 S.W.3d 450, 453 (Tenn. 2014) (citing Vasser and stating that "Tennessee, like most jurisdictions, recognizes two distinct meanings of the term 'conviction'"). "A conviction in the 'general sense' is the establishment of guilt by a guilty plea or a verdict independent of sentence and judgment."

_____

[3] The current version of this provision is now codified in Tennessee Code Annotated section 55-10-411(c) (Supp. 2014). We also note that our legislature amended the judicial diversion statute in 2011 to specifically exclude the offense of driving under the influence from eligibility for judicial diversion. See Tenn. Code Ann. § 40-35-313(a)(1)(B)(i)(b) (Supp. 2011) (current version at Tenn. Code Ann. § 40-35-313(a)(1)(B)(i)(C) (2014).

Rodriguez, 437 S.W.3d at 453; see also Vasser, 870 S.W.2d at 546. However, the "technical sense" of the term "requires a formal adjudication by a court and the entry of a judgment of conviction." Rodriguez, 437 S.W.3d at 454; see also Vasser, 870 S.W.2d at 545-46. Therefore, as used in its technical meaning, the term conviction encompasses, "'not only a verdict, but also a sentence passed by the court.'" Vasser, 870 S.W.2d at 545 (quoting Spencer v. State, 125 Tenn. 64, 69-70, 140 S.W. 597, 598-99 (1911)). The Court of Criminal Appeals in Vasser also concluded that conviction in the context of section 55-10-403(b)(1) was used by the legislature in the "general sense" and, therefore, that the legislature did not intend to reference "anything more than the finding of guilt stage of the case." Vasser, 870 S.W.2d at 547. Based on that reasoning, the Vasser court concluded that the mandatory minimum provision of the DUI statute, applicable upon the finding of guilt, precluded the possibility of judicial diversion. Id.

Notably, however, the Vasser court also opined that, should the term "convicted" be construed in its technical sense, that is, as "'not only a verdict, but also a sentence passed by the court,'" then "a strong and, perhaps, conclusive argument could be made that the statute does not preclude a defendant from obtaining judicial diversion totally, without serving any time in jail." Id. at 545-46 (quoting Spencer, 140 S.W. at 598-99 ). The Vasser court elaborated on its reasoning:

> The reason is that the judicial diversion statute precludes the entry of a judgment of guilt. Thus, a trial court could decide that a defendant merited diversion and, by refusing to enter a judgment of guilt, prevent the defendant from even reaching the status of a "convicted" person which would be necessary to bring the DUI statutory prohibitions into play.

Id. at 546. Thus, the Vasser court specifically reasoned, as did the appellate court in the instant case, that a provision imposing a mandatory minimum sentence which applies only to those *sentenced* under the act, would not preclude the possibility of judicial diversion because a grant of judicial diversion takes place prior to sentencing. The DUI statute analyzed by the Vasser court provided that no "person *charged*" with DUI shall be eligible for pretrial diversion and that no "person *convicted*" of DUI shall be eligible for any kind of suspension of sentence or probation. Tenn. Code Ann. § 55-10-403(b)(1) (Supp. 1992) (emphasis added). By contrast, the applicable provision of the Drug-Free School Zone Act provides that "a defendant *sentenced*" under the Act shall be required to serve the mandatory minimum sentence of the appropriate range. Id. § 39-17-432(c) (emphasis added).

The relevant language of both the judicial diversion statute and the Drug-Free School Zone Act is clear and unambiguous, and we must derive the legislative intent from the plain

and ordinary meaning of the statutory language. See Wilson, 132 S.W.3d at 341.[4] The mandatory minimum service requirement of the Drug-Free School Zone Act applies only to "a defendant sentenced" under that Act. See Tenn. Code Ann. § 39-17-432(c). Indeed, the Drug-Free School Zone Act is an enhancement statute which applies only upon the conviction and sentencing of a Defendant for violation of Tennessee Code Annotated section 39-17-417. State v. Fields, 40 S.W.3d 435, 439 (Tenn. 2001) ("To invoke the [Drug-Free] School Zone Act and sentence the defendant in accordance with the Act's enhanced penalties . . . the defendant would have had to be convicted of violating, or conspiring to violate, section 39-17-417."); Smith, 48 S.W.3d at 168 ("[T]he only way to punish an offender under the Drug-Free School Zone Act is to first determine his sentence under Tenn. Code Ann. § 39-17-417.")

Conversely, as stated previously herein, the decision of a trial court to grant judicial diversion does not constitute a sentence, but rather a decision to defer sentencing. In judicial diversion cases, no judgment of conviction is entered, and a sentence is imposed only in the instance that the defendant fails to successfully complete the period of probation pursuant to the grant of judicial diversion. Therefore, we must conclude that the plain meaning of the mandatory minimum service requirement of the Drug-Free School Zone Act, applicable only to those who have been "sentenced" under the Act, does not preclude the possibility of judicial diversion.

---

[4] The State points out that the intent of the Drug-Free School Zone Act as a whole is articulated in subsection (a):

> It is the intent of this section to create drug-free zones for the purpose of providing vulnerable persons in this state an environment in which they can learn, play and enjoy themselves without the distractions and dangers that are incident to the occurrence of illegal drug activities. The enhanced and mandatory minimum sentence required by this section for drug offenses occurring in a drug-free zone are necessary to serve as a deterrent to such unacceptable conduct.

Tenn. Code Ann. § 39-17-432(a). As a result, the State argues that the application of judicial diversion under this statute is contrary to the express legislative intent of deterring drug activity in school zones. However, the General Assembly's intent to precipitate the deterrent effect of drug-related behavior in school zones through enhanced and mandatory minimum sentences does not necessarily bar the application of judicial diversion. We decline the State's invitation to extrapolate such a specific meaning from this broad, general statement of intent. Indeed, under our interpretation adopted herein, the enhanced and mandatory minimum sentence provisions of this statute would not shed their deterrent effect upon the granting of judicial diversion, as a defendant sentenced under this statute still faces an increased mandatory sentence should she fail to successfully complete the judicial diversion probationary period.

Furthermore, we note that the General Assembly has specifically enumerated a number of offenses within the judicial diversion statute which are not eligible for judicial diversion. See Tenn. Code Ann. § 40-35-313(a)(1)(B). Those offenses include: any Class A or B felony; certain sexual offenses;[5] and knowing abuse or neglect of an adult in violation of section 71-6-117 (Supp. 2010 & Supp. 2014) or section 71-6-119 (Supp. 2010 & 2012). Id. The current version of the statute also includes: driving under the influence of an intoxicant, see id. § 55-10-401 (Supp. 2014), and any offense committed by an elected or appointed person in the executive, legislative or judicial branch which was committed in the person's official capacity or involved the duties of the person's office. See id. § 40-35-313(a)(1)(B)(i) (2014). Notably, the violations of the Drug-Free School Zone Act are not included in this list. We echo the Court of Criminal Appeals in concluding that "[i]t is within the General Assembly's discretion to determine which offenses it deems ineligible for diversion, and the General Assembly has not done so in this instance. . . . [Therefore,] we cannot, and will not, read into the statutes an exclusion not specifically stated therein." Dycus, 2013 WL 5371957, at *6.

Accordingly, we hold that the mandatory minimum service provision of the Drug-Free School Zone Act does not render offenses committed under the Act ineligible for judicial diversion.

### *The Trial Court's Denial of Judicial Diversion*

Having determined that the Defendant was eligible for judicial diversion, we turn now to whether the trial court properly denied judicial diversion. There is no presumption that a defendant is a favorable candidate for judicial diversion. Electroplating, 990 S.W.2d at 229. The decision to grant or deny judicial diversion is a question left to the sound discretion of the trial court. Parker, 932 S.W.2d at 958. In determining whether a qualified defendant is a favorable candidate for judicial diversion, a trial court must consider: "(a) the accused's amenability to correction; (b) the circumstances of the offense; (c) the accused's criminal record; (d) the accused's social history; (e) the accused's physical and mental health; and (f) the deterrence value to the accused as well as others." Id.; see also Electroplating, 990

---

[5] These sexual offenses include: aggravated prostitution, see Tenn. Code Ann. § 39-13-516 (2010 & 2014); aggravated rape, see id. § 39-13-502 (2010 & 2014); aggravated sexual battery, see id. § 39-13-504 (2010 & 2014); aggravated sexual exploitation of a minor, see id. § 39-17-1004 (2010 & 2014); especially aggravated sexual exploitation of a minor, see id. § 39-17-1005 (2010 & 2014); rape, see id. § 39-13-503 (2010 & 2014); rape of a child, see id. § 39-13-522 (2010 & 2014); sexual battery by an authority figure, see id. § 39-13-527 (2010 & 2014); sexual exploitation of a minor, see id. § 39-17-1003 (2010 & 2014); statutory rape by an authority figure, see id. § 39-13-532 (2010 & 2014); and any attempt, see id. § 39-12-101 (2010 & 2014), solicitation, see id. § 39-12-102 (2010 & 2014), or conspiracy, see id. § 39-12-103 (2010 & 2014), to commit any of the above enumerated sexual offenses. See id. § 40-35-313(a)(1)(B)(ii).

S.W.2d at 229. Additionally, a trial court also may consider "whether judicial diversion will serve the ends of justice – the interests of the public as well as the accused." Parker, 932 S.W.2d at 958.

The Court of Criminal Appeals held that, "[b]ecause the record does not reflect that the trial court considered all of the relevant factors in its analysis, nor did the court explain why the factors it relied upon outweighed the other factors," the trial court erred in its denial of judicial diversion. Dycus, 2013 WL 5371957, at *7. As a result, the Court of Criminal Appeals reversed and vacated the Defendant's sentence and remanded the case to the trial court to reconsider the judicial diversion issue. Id. at *8. However, the appellate court rendered its decision before our decision in King, in which we held that the standard of review applicable to a trial court's decision to grant or deny judicial diversion is an abuse of discretion standard with a presumption of reasonableness. See King, 432 S.W.3d at 327. Specifically, under King,

> when the trial court considers the Parker and Electroplating factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion, the appellate court must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision.

Id. In reaching its decision, the trial court is not required to recite on the record all of the Parker and Electroplating factors; however, the record should reflect that the trial court considered all of the factors in rendering its decision and that it "identified the specific factors applicable to the case before it." King, 432 S.W.3d at 327. If the trial court "fails to consider and weigh the applicable common law factors," the appellate court either may conduct a de novo review or remand the issue for reconsideration. Id. at 328. "The determination as to whether the appellate court should conduct a de novo review or remand for reconsideration is within the discretion of the reviewing court." Id. In making such a determination, relevant factors include: "the adequacy of the record, the fact-intensive nature of the inquiry, and the ability of the court to request supplementation of the record." Id. (citing State v. Pollard, 432 S.W.3d 851, 864 (Tenn. 2013); State v. Caudle, 388 S.W.3d 273, 279-80 (Tenn. 2012); Bise, 380 S.W.3d at 705 n.41; Electroplating, 990 S.W.2d at 229-30).

In considering whether to grant or deny judicial diversion in this case, the trial court first noted that the Defendant was a "very young person" at the time she committed the instant offenses. However, the trial court focused primarily on the fact that the Defendant's later offenses were committed while her earlier offenses were pending. Because the Defendant continued to commit similar crimes after being charged and appearing in court on her earlier offenses, the trial court concluded that the Defendant showed "a complete

disrespect for the law and a lack of understanding of the wrongfulness of [her] actions." The trial court concluded that it was not "convinced, based on the evidence presented," that the Defendant was amenable to rehabilitation. The trial court reasoned that, on a scale from one to ten, the Defendant's likelihood of being rehabilitated was "way down there in the ones and . . . two." Based on these findings, the trial court denied the Defendant's request to be placed on judicial diversion.

Although the fact that many of the later offenses in the instant case were committed while the Defendant's earlier offenses were still pending is certainly significant to the Defendant's amenability to correction, that consideration alone is not sufficient to satisfy the minimum standard set forth in King. See King, 432 S.W.3d at 326-28. We cannot conclude from the record before us that the trial court considered the Defendant's criminal record, the circumstances of the offense, the Defendant's social history, her physical and mental health, the deterrence value to the Defendant as well as to others, or whether judicial diversion would serve the ends of justice. See id. at 326 (citing Electroplating, 990 S.W.2d at 229; Parker, 932 S.W.2d at 958). Therefore, the record reflects that the trial court did not adequately consider and weigh on the record the applicable factors set forth in Parker and Electroplating. See King, 432 S.W.3d at 327; Parker, 932 S.W.2d at 958; Electroplating, 990 S.W.2d at 229.

Although the trial court did not expressly address all of the relevant factors, the record in the instant case is sufficient for a de novo review. Therefore, we proceed to a de novo review of whether judicial diversion is appropriate. See King, 432 S.W.3d at 328.

We first note that the Defendant is "qualified" for judicial diversion under the requirements of Tennessee Code Annotated section 40-35-313(a)(1)(B). The presentence report, entered into evidence at the sentencing hearing, indicates that the Defendant had no prior criminal convictions preceding those underlying the instant case. However, we also note that the earliest of the instant offenses were committed in November 2010, less than a year after the Defendant turned eighteen. Therefore, the Defendant's lack of criminal record weighs in favor of judicial diversion, if only slightly so, considering her age at the time of the offenses. At the time of sentencing, the Defendant successfully had completed high school and also had begun to take college courses online. The Defendant, however, was unemployed at the time of sentencing and had no history of employment. In her testimony at the sentencing hearing, the Defendant stated that she previously sold marijuana because she was "hanging around the wrong crowd" but that she no longer associated with those people or dealt drugs. Therefore, there are both negative and positive aspects of the

Defendant's social history, and we hold that this factor is neutral to our judicial diversion determination.[6]

In her interview for the presentence report, the Defendant reported that she was in good mental and physical health. However, nothing else in the record reflects anything of note regarding the Defendant's mental and physical health. This factor is neutral as to our judicial diversion determination. See King, 432 S.W.3d at 328 (holding that the factor concerning the defendant's mental and physical health was neutral where the record reflected "nothing remarkable" regarding the defendant's health).

We consider the procedural history of the underlying offenses and the fact of the Defendant's continued criminal behavior to be the most significant factor to our consideration. The Defendant committed twelve separate offenses spanning the course of approximately a year and a half. The Defendant's first three offenses for simple possession of marijuana, criminal trespass, and evading arrest, were committed on November 11, 2010. The Defendant was indicted on those offenses in June 2011. Next, the Defendant was arrested for simple possession of marijuana and criminal trespass on March 18, 2011. The Defendant was indicted on those offenses in November 2011. On April 21, 2011, little more than one month since her March 18, 2011 arrest, the Defendant again was arrested, this time for possession of marijuana over .5 ounces with intent to sell or deliver within 1,000 feet of a school zone and possession of drug paraphernalia. Those charges proceeded to circuit court on a criminal information filed in May 2012. On September 13, 2011, while she had seven charges pending, including one felony charge, the Defendant was arrested on four more offenses: possession of marijuana, possession of paraphernalia, evading arrest, and criminal trespass. The Defendant was indicted on those offenses in May 2012. Finally, the Defendant was arrested on her final offense of possession of marijuana on May 1, 2012. That offense also proceeded to circuit court on the criminal information filed in May 2012.

It is clear from the record that the Defendant repeatedly continued to commit marijuana-related offenses while she had pending charges at various stages in the criminal process, including while she was released on bond. Moreover, she continued to trespass on Clarksville Housing Authority property. As the trial court noted, this continued criminal behavior weighs heavily against the Defendant's amenability to correction, as well as against the potential deterrence value of judicial diversion on the Defendant. The Defendant's continued criminal behavior also impacts our analysis of the circumstances of the offenses

---

[6] By contrast, in King, factors which we considered as evidence of a positive social history favoring judicial diversion were: "volunteering in the community," "obtaining gainful employment," and the defendant having two parents testify "that they would assist her in satisfying the terms of any probationary period." King, 432 S.W.3d at 328.

as Defendant's convictions are more than isolated instances of criminal behavior. Rather, they constitute a pattern of drug activity taking place over the course of a significant period of time and in spite of multiple arrests. Therefore, the Defendant's amenability to correction, the deterrence value to the Defendant, and the circumstances of the offense weigh heavily against the grant of judicial diversion. See State v. Parson, 437 S.W.3d 457, 496 (Tenn. Crim. App. 2011) (affirming denial of judicial diversion where, even though the remaining factors were satisfactory or inconclusive, the Defendant's amenability to correction and the circumstances of the offense "weighed heavily" against judicial diversion).

Based on our de novo review of the record, we conclude that the ends of justice would not be served by granting the Defendant's request for judicial diversion. Therefore, even though the trial court did not adequately consider all of the necessary factors, the record supports the trial court's denial of judicial diversion.

## Conclusion

The mandatory minimum service provision of the Drug-Free School Zone Act does not render offenses committed under that act ineligible for judicial diversion. Additionally, although the trial court failed to adequately consider the appropriate factors, our de novo review of the record demonstrates that the trial court properly denied the Defendant's request to be placed on judicial diversion. Accordingly, we reinstate the trial court's judgments.

_____
JEFFREY S. BIVINS, JUSTICE

-16-