IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 22, 2016 Session


**STATE OF TENNESSEE v. GEORGE MARK ALAN GREENE**


**Appeal from the Criminal Court for Claiborne County**
**No. 2013CR1770     E. Shayne Sexton, Judge**

_____


**No. E2015-01213-CCA-R3-CD – Filed August 12, 2016**
_____


The defendant, George Mark Alan Greene, pled guilty to one count of incest, a Class C felony, and the trial court denied his application for judicial diversion. On appeal, he contends that the judgment of the trial court should be reversed because he is a suitable candidate for judicial diversion. We conclude that although the trial court did not properly consider all of the factors in denying judicial diversion, a de novo review of the record supports the denial of diversion. We affirm the judgment of the trial court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Neal W. Stanifer (on appeal) and David H. Stanifer (on appeal and at hearing), Tazewell, Tennessee, for the Appellant, George Mark Alan Greene.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Jared Effler, District Attorney General; and Graham E. Wilson, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## FACTS AND PROCEDURAL HISTORY

This case arose after the defendant sexually abused the victim, who was his daughter. The defendant entered a guilty plea to one count of incest, and the trial court held a hearing to determine the appropriate sentence. The victim testified at the sentencing hearing that she was thirteen years old when the abuse occurred. She explained that she and the defendant typically slept in the same bed. One morning, the victim's brother got into the bed and asked the victim to rub his back. The defendant then asked the victim if she wanted him to rub her back. The victim agreed, and the defendant asked if she wanted him "to rub [her] butt." The victim said no, but the defendant "did it anyway." The victim "froze", and the defendant inserted his fingers into the victim's vagina. The victim explained that the incident required her to receive counseling and that it was something she would carry with her for the remainder of her life. She testified that she was aware that the defendant smoked marijuana "for pain purposes" and that he had been diagnosed with bipolar disorder. She stated that she wished to see the defendant punished for his actions.

The defendant testified that he pled guilty to the charge of incest and "[a]bsolutely" accepted responsibility for his actions. He testified that he did not recall the incident but that he accepted the victim's explanation as the truth. He explained that he was on several medications at the time of the incident that may have affected his memory. He testified that he pled guilty despite having no memory of the event because he did not want to subject the victim to a trial. When asked if he was acknowledging that he committed the offense, he stated that if the victim said he committed the offense, then "[he] did." He testified that he was not admitting guilt to the offense based on his own memory of the incident.

The defendant testified that his wife filed for divorce after the allegations were reported and that he was currently living in Alabama in an apartment next door to his father. He his income consisted of disability checks, and he used his disability checks to pay child support. He stated that he should receive judicial diversion because "medically, [he] just wasn't aware of how sick [he] was." He stated that since the incident, he had learned how to better care for his mental health. He explained that he saw a psychiatrist every two months, that he was under a doctor's direction and control, and that he followed the doctor's recommendations. He stated that he had not had any problems before the incident and that he had not behaved unlawfully after the incident. He testified that he did not believe he posed a risk to anyone in the future.

The defendant stated that had a bachelor's degree and that he briefly taught school as a substitute teacher for a semester. He testified that he formerly coached a recreational soccer team for middle school boys and girls who were a similar age as the victim. The defendant testified that he smoked marijuana to help him sleep, and he agreed that using marijuana was against the law.

The defendant's father testified that the defendant lived next door to him in Alabama. He testified that he had seen improvement in the defendant's behavior since he moved to Alabama and began receiving proper mental health treatment. He testified that the defendant was no longer using marijuana. He stated that he did not believe that the defendant posed a threat to anyone else.

The State argued that several factors weighed against granting the defendant judicial diversion. The State argued that he had not accepted responsibility for his actions because he merely testified that he would believe his daughter that he committed the offense. The State argued that the circumstances of the offense weighed strongly against judicial diversion because the defendant molested his thirteen-year-old daughter. The State contended that the defendant's social history weighed against diversion, as he was coaching a soccer team of girls that were the same age as his daughter at the time of the offense. The State also argued that diversion would depreciate the seriousness of the offense.

The trial court found that the defendant was not a suitable candidate for judicial diversion. The court found that "the most compelling issue is the depreciating the seriousness of the offense." The court found that the defendant was amenable to correction, noting that the defendant was "making steps and doing the right thing toward -- toward readying himself for the next step." The court found that the offense was shocking to the conscience of the court. The court stated that it was not denying judicial diversion based on the victim's wish to see the defendant punished but that because "the overall crime itself is shocking" to the conscience, granting judicial diversion would depreciate the seriousness of the offense. The court stated that it would not grant diversion "simply because this is just a case that shocks" the conscience.

## ANALYSIS

The trial court possesses the discretion to place qualified defendants on judicial diversion. A qualified defendant is one who is found guilty or pleads guilty or nolo contendere to the offense for which judicial diversion is sought, is not seeking the deferral of further proceedings for a statutorily prohibited sexual offense, has not previously been convicted of a felony or a Class A misdemeanor for which a sentence of

3

confinement is served, and has not previously been granted judicial diversion. *See* T.C.A. § 40-35-313(a)(1)(B)(i)(a), (c), (d), (e) (2010).

The decision to grant or deny judicial diversion rests within the sound discretion of the trial court. *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). In determining whether to grant judicial diversion, the trial court must consider the following factors: (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused. *Id.*; *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). "[T]he trial court must weigh the factors against each other and place an explanation of its ruling on the record." *State v. King*, 432 S.W.3d 316, 326 (Tenn. 2014) (citing *Electroplating*, 990 S.W.2d at 229). If "the trial court considers the *Parker* and *Electroplating* factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion, the appellate court must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id.* at 327 (footnote omitted). The trial court is not required to recite all of the factors, but the record must reflect that the court considered the factors and identified specific factors applicable to the case before it. *Id.* at 327. However, if "the trial court fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply," and the abuse of discretion standard is not appropriate. *Id.* "In those instances, the appellate courts may either conduct a de novo review or, if more appropriate under the circumstances, remand the issue for reconsideration." *Id.* The decision of whether de novo review or a remand is the appropriate course of action is within the discretion of this court. *Id.* "In making such a determination, relevant factors include: 'the adequacy of the record, the fact-intensive nature of the inquiry, and the ability of the court to request supplementation of the record.'" *State v. Dycus*, 456 S.W.3d 918, 930 (Tenn. 2015) (quoting *King*, 432 S.W.3d at 328).

Here, the trial court only considered the first two *Electroplating* factors: whether the defendant was amenable to correction and the circumstances of the offense. The court found that the first factor weighed in favor of the defendant because he appeared amenable to correction. The court placed great weight on the second factor, denying judicial diversion based solely on the shocking nature of the offense and the belief that diversion would depreciate the seriousness of the offense. The record does not reflect that the court considered any of the remaining factors. *See Dycus*, 456 S.W.3d at 930 (concluding that the trial court's analysis of one of the factors was not adequate to "satisfy the minimum standard set forth in *King*"). However, we conclude that the record

4

is sufficient for us to conduct a de novo review of the decision to deny judicial diversion. *Id.* at 931.

Turning to the factors, several factors weigh in favor of judicial diversion or are neutral. The trial court found that the defendant was amenable to correction. The record reflects that the defendant had honored the victim's request not to contact her, he testified that he accepted responsibility for his actions, and he was fulfilling his child support obligations. This factor weighs in favor of judicial diversion. The defendant had no prior criminal history, and this factor also weighs in favor of judicial diversion. The defendant testified that he suffered from mental health issues, but he explained that he was receiving treatment for these issues and following his doctor's recommendations. The defendant's physical and mental health is neutral.

Several factors also weigh against judicial diversion. The defendant testified that he coached youth soccer around the time of the offense and that there were girls on the team who were the same age as the victim. The defendant also testified that he smoked marijuana and that he knew it was illegal to do so. The trial court found that granting judicial diversion would depreciate the seriousness of the offense. The victim testified that the defendant asked her if she wanted him to rub her "butt," and she said no. Despite the victim's response, the defendant rubbed her buttocks and digitally penetrated her vagina. The defendant also committed these acts in front of the victim's younger brother. We conclude that based on "the totality of the circumstances, the ends of justice would not be served by granting judicial diversion to" the defendant. *King*, 432 S.W.3d at 329. Accordingly, we affirm the trial court's denial of judicial diversion.

## CONCLUSION

Based upon the foregoing analysis, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE