FILED
08/20/2019
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 30, 2019 Session

## STATE OF TENNESSEE v. ROBERT DIGGS

**Appeal from the Criminal Court for Sullivan County**
**No. S66031   James F. Goodwin, Jr., Judge**
_____

### No. E2018-01755-CCA-R3-CD
_____

Robert Diggs, Defendant, pled guilty to two counts of sale of a Schedule III controlled substance within a drug-free zone (counts one and five), two counts of delivery of a Schedule III controlled substance within a drug-free zone (counts two and six), and one count of maintaining a dwelling where a controlled substance was kept or sold (count seven). The trial court ordered Defendant to serve concurrent sentences of two years in the Tennessee Department of Correction for the convictions in counts one and five. No sentence was imposed in counts two and six. On appeal, Defendant argues that the trial court erred by ordering him to serve his sentence in the Tennessee Department of Correction because the trial court incorrectly determined that his convictions under the Drug-Free School Zone Act ("DFSZ Act") made him ineligible for community corrections. After a thorough review of the facts and applicable case law, we conclude that the trial court properly determined that Defendant was not eligible for community corrections because Defendant was convicted under the DFSZ Act and we affirm the convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, J., joined.

Todd East, Kingsport, Tennessee, for the appellant, Robert Lee Diggs.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Peter Filetti, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual and Procedural Background

On January 27, 2016, the Sullivan County Grand Jury indicted Defendant and Co-defendant, Mimi Barrett, on three counts of sale of a Schedule III controlled substance within a drug-free zone (counts one, three, and five), three counts of delivery of a Schedule III controlled substance within a drug-free zone (counts two, four, and six), and one count of maintaining a dwelling where a controlled substance was kept or sold (count seven).

On February 2, 2018, Defendant entered an open plea of no contest to counts one, two, five, six, and seven.[1] Count two merged with count one and count six merged with count five. Defendant requested judicial diversion. After a guilty plea colloquy, the trial court accepted Defendant's guilty plea.

At the sentencing hearing on August 24, 2018, Defendant testified that he formerly worked for DC and R Construction for over ten years. He explained that he currently worked for Dollar Tree. Defendant said he regretted his actions that led to his convictions for the current offenses and explained that, when the offenses occurred, he was "around the wrong people at the wrong time[.]" Defendant asserted that he could successfully complete a drug screen and could complete the requirements of a diverted sentence. On cross-examination, Defendant agreed that he had a criminal history of misdemeanor convictions. Defendant also agreed that he had received a probated sentence for prior convictions, including a theft conviction, and that he had violated his probation on the theft conviction for failing to pay fines. The trial court deferred its decision on Defendant's manner of service.

On August 31, 2018, the trial court addressed Defendant's request for diversion. The trial court found that Defendant was eligible for diversion. Defendant had been previously convicted for possessing drug paraphernalia; he received a probated sentence for this conviction but violated his probation by failing to report, ignoring correspondence, and failing to register for an alcohol and drug evaluation. Defendant also previously pled guilty to petty larceny in Virginia; he received a probated sentence for this conviction, but his probation was revoked and later reinstated. Additionally, in 2016, Defendant was convicted of misdemeanor theft and received a suspended sentence. Defendant violated the terms of this probation by failing to register for a class. Defendant also had two prior convictions for driving on a suspended license.

---

[1] We assume from the record that counts three and four were dismissed prior to Defendant's entry of the no contest plea. The trial court did not enter judgment sheets for these counts.

The trial court noted that Defendant admitted in the presentence report that he continued to use marijuana until February 2018. Defendant also admitted to purchasing Lortab "off the street[.]" The trial court addressed the factors set out in *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998), and concluded that in Defendant's case, the factors supported the denial of judicial diversion.

Next, the trial court addressed Defendant's eligibility for community corrections and incorporated its factual findings and conclusions of law that it set out when sentencing Co-defendant Barrett:

> Now, we turn to community corrections and there's no doubt that the 2009 case of *State v. Johnson* says that if a person is eligible under 40-36-106(a) which means that basically it's a person who without this option would be incarcerated in a correctional institution; (b) persons who are convicted of property related or drug and alcohol related felony offenses or other felony offenses not involving crimes against a person, persons who are convicted of nonviolent felonies, persons convicted of felony offenses for the use or possession of a weapon was not involved and persons who do not demonstrate a past or present pattern of behavior indicating violence, persons who do not demonstrate a pattern of committing violence, then they would be an eligible person for community corrections under 40-36-106(a), and the *Johnson* case stands for the proposition that you do not have to be eligible for probation in order to qualify for community corrections under that subpart of that statute. They do say that to come in under special needs, which is 40-36-106(c) that you must first be eligible for regular probation, so that's what the *Johnson* case stands for.

> In *State v. Dycus* the Tennessee Supreme Court from October ---- well, in a January 23rd, 2015 opinion in determining whether or not the mandatory minimum service requirement of the drug-free school zone act rendered offenses under the act ineligible for judicial diversion. Well, that was the question and on page ---- well, I'm going to say page 9 of the Lex[i]s printout of that case which would have been page 925 of the actual reported opinion. The Supreme Court, who was it, Chief Justice Jeffrey Bivins authored the opinion, says on page 925, "With the mandatory minimum service provision of the drug-free school zone act the general assembly has declared specifically and [unambiguously] that defendants being sentenced for committing drug offenses in a school zone shall serve the entire minimum term of years in the defendant's sentencing range.["] . . . "Accordingly we have held that defendants sentenced under the act to the

minimum term in their sentencing range will serve literally 100% of their sentences without the benefit of parole or sentence reduction credits. Likewise a defendant sentenced under the act required to serve the entire term of the applicable minimum sentence clearly would be ineligible for alternative sentences in lieu of confinement such as probation or community corrections." And under the community corrections the statutes listed are 40-36-106 and 40-36-104(c). Then they distinguish judicial diversion because ---- when you boil it all down it's because there's no ---- because the statute says sentenced under this act and in diversion cases you're not sentenced. So you wouldn't be sentenced under the act but that's how they ultimately arrive at their conclusion that diversion cases are still applicable in the drug-free school zone act counts, so *Dycus* appears to conflict with counsel. The holding in *Johnson* is what it says. What I just read in *Dycus* is obviously (inaudible)[2] because they weren't actually addressing whether someone was eligible for community corrections with regard to the drug-free school zone act. However, that (inaudible) is a Tennessee Supreme Court opinion. This Court finds that because [Defendant] is being sentenced under the Tennessee drug-free school zone act that []he would not be eligible for probation or community corrections.

Thus, the trial court determined that Defendant was not eligible for community corrections because he had been convicted of selling and delivering a controlled substance within a drug-free zone. The trial court ordered Defendant to serve a sentence of two years in the Tennessee Department of Correction for each count. The trial court ordered the sentences to run concurrently, for a total effective sentence of two years with release eligibility after service of 100% of the sentence.

Defendant now timely appeals the trial court's judgments.[3]

### Analysis

On appeal, Defendant contends that the trial court abused its discretion by denying his request for community corrections on the basis that Defendant was ineligible for the alternative sentencing program. He asserts that the Tennessee Supreme Court's statement in *State v. Dycus*, 456 S.W.3d 918, 925 (Tenn. 2015), that a defendant convicted under the DFSZ Act "would be ineligible for alternative sentences in lieu of confinement such

---

[2] Defendant asserts that the inaudible word was "dictum[.]"

[3] Defendant's notice of appeal was filed prematurely, but pursuant to Tennessee Rule of Appellate Procedure 4(d) we will treat it as filed after the judgments were entered. *See State v. Jason Peter Meeks*, No. M2011-01134-CCA-R3-CD, 2012 WL 3085563, at *1 n.1 (Tenn. Crim. App. July 31, 2012), *no perm. app. filed*.

as . . . . community corrections," is dictum. Defendant also notes that the DFSZ Act was enacted after the community corrections statute, and therefore, the Tennessee General Assembly could have included in the plain language of the DFSZ Act that defendants convicted under that provision are not eligible for community corrections. He asserts that this court should hold that conviction under the DFSZ Act does not make defendants ineligible for community corrections to uphold the intent of the legislature. Finally, he argues that he is a favorable candidate for alternative sentencing and that the trial court's denial of community corrections is not reflective of the purposes and principles of the sentencing act.

The State responds that the trial court properly exercised its discretion in determining that Defendant was not eligible for community corrections because of his conviction under the DFSZ Act. The State argues that both the Tennessee Supreme Court and this court have interpreted the DFSZ Act to require mandatory incarceration.

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2018); *Bise*, 380 S.W.3d at 706. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2018), Sentencing Comm'n Cmts.

The intent of the Community Corrections Act was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders[.]" Tenn. Code Ann. § 40-36-103(1) (2018). Eligible offenders under the Community Corrections Act include: "[p]ersons who, without this option, would be incarcerated in a correctional institution"; "[p]ersons who are convicted of property-related or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5"; "[p]ersons who are convicted of nonviolent felony offenses"; "[p]ersons who are convicted of felony offenses in which the use or possession of a weapon was not involved"; "[p]ersons who do not demonstrate a present or past pattern of behavior indicating violence"; and "[p]ersons who do not demonstrate a pattern of committing violent offenses." *Id.* § 40-36-106(a)(1)(A)-(F) (2018).

Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the

Act as a matter of law or right." *State v. Ball*, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)). Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." Tenn. Code Ann. § 40-36-106(d) (2018).

An individual violates the DFSZ Act by knowingly selling or delivering a controlled substance "within one thousand feet (1,000') of the real property that comprises a . . . recreational center or park[.]" Tenn. Code Ann. § 39-17-432(b)(1) (2015).

> Notwithstanding any other law or the sentence imposed by the court to the contrary, a defendant sentenced for a violation of [the DFSZ Act] ***shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence***. Any sentence reduction credits the defendant may be eligible for or earn shall not operate to permit or allow the release of the defendant prior to full service of the minimum sentence.

Tenn. Code Ann. § 39-17-432(c) (2018) (emphasis added). In *Davis v. State*, the Tennessee Supreme Court stated that "defendants dealing drugs in school zones who are sentenced to the minimum term in their sentencing range will serve literally 100% of their sentences." 313 S.W.3d 751, 764 (Tenn. 2010).

In *Dycus*, the supreme court considered "whether the mandatory minimum service requirement of . . . []the [DFSZ Act] renders offenses under that act ineligible for judicial diversion." 456 S.W.3d at 920. The Tennessee Supreme Court stated that, similar to the fact that defendants sentenced under the DFSZ Act do not receive sentence reduction credits, "a defendant sentenced under the Act, required to serve the entire term of the applicable minimum sentence, clearly would be ineligible for alternative sentences in lieu of confinement such as probation[] . . . or community corrections[.]" *Id*. at 925. The court then discussed the interaction between judicial diversion and the DFSZ Act and held that "the mandatory minimum service provision of the Drug-Free School Zone Act does not render offenses committed under the Act ineligible for judicial diversion." *Id*. at 929.

Turning to cases decided by this court that discuss the DFSZ Act as applied to alternative sentencing, in *State v. Jeffrey B. Lindemeyer*, No. 03C01-9808-CR-00284, 1999 WL 826026, at *1 (Tenn. Crim. App. Oct. 18, 1999), *perm. app. denied* (Tenn. Apr. 17, 2000), this court affirmed the trial court's determination that the defendant was not eligible for community corrections because the DFSZ Act "required incarceration for at

- 6 -

least the minimum sentence[.]" Specifically, this court addressed the issue of whether the phrase "to serve at least the minimum for [his] appropriate range of sentence" requires mandatory incarceration. *Id.* at *3. This court stated:

> Read as a whole, the fair import of the School Zone Act is a legislative goal of deterrence through guarantee of minimum incarceration terms for the qualifying offenses. After creating a distinct subdivision of offenders based on specific illicit activity, the School Zone Act both raises the offense classification by one grade, and thereby the minimum punishment range, and requires the trial court's imposing at least the minimum sentence. The School Zone Act then retracts some discretion generally granted a trial court in sentencing matters: A defendant must serve his minimum sentence "[n]otwithstanding any . . . . sentence imposed by the court to the contrary." Tenn. Code Ann. § 39-17-432(c). We read the subsequent proscriptions against avoiding the minimum sentence by the enumerated means as emphasizing the required service of a mandatory incarceration, rather than as impliedly carving out an exception to the rule by omission. The overall statute speaks for a mandatory incarceration.

*Id.* at *4. This court concluded that "that the General Assembly intended that the School Zone Act achieve more than a 'minimum sentence,' because the Code already provides minimum sentences for felony offenses." *Id.*

In *State v. Charles Orlando Fields*, the defendant argued that the trial court imposed an excessive sentence by denying community corrections for his convictions of "selling one-half gram or more of cocaine within one thousand feet of a school, a Class A felony, and one count of distributing one-half gram or more of cocaine within one thousand feet of a school, a Class A felony." W2001-00124-CCA-R3-CD, 2002 WL 1558575, at *1 (Tenn. Crim. App. Jan. 2, 2002), *perm. app. denied* (Tenn. May 28, 2002). This court applied a presumption of correctness to the trial court's sentencing determination and affirmed the sentence because the trial court "imposed the sentence in conformity with the sentencing laws." *Id.* at *7.

We rely on this court's previous decision in *Jeffrey B. Lindemeyer* for instruction in this case. We conclude that the trial court did not abuse its discretion by denying community corrections on the grounds that Defendant had been convicted under the DFSZ Act. Because previous panels of this court have concluded that a defendant convicted of violating the DFSZ Act must serve the sentence in confinement, the trial court properly applied precedent to Defendant's case. Defendant is not entitled to relief on this ground.

Here, Defendant received a sentence of two years for each conviction.  Selling or delivering a Schedule III controlled substance is a Class D felony, *see* Tenn. Code Ann. § 39-17-417(d)(1) (2015), and a Range I sentence for a standard offender is between two and four years.  *See* Tenn. Code Ann. § 40-35-112(a)(4) (2018).  Similarly, maintaining a dwelling where a controlled substance was kept or sold is a Class D felony.  *See* Tenn. Code Ann. § 53-11-401 (2015).  Because Defendant's sentences were within the appropriate range, the trial court's sentencing determinations are entitled to a presumption of reasonableness, and we will not reverse absent an abuse of discretion.  As we have previously concluded, the trial court did not err in denying community corrections on the ground that Defendant was convicted under the DFSZ Act.  Therefore, the trial court did not abuse its discretion by ordering Defendant to serve his total effective sentence of two years in confinement.

## **Conclusion**

After reviewing the facts and applicable case law, we affirm the trial court's denial of community corrections.

_____
ROBERT L. HOLLOWAY, JR., JUDGE