IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 29, 2016

**STATE OF TENNESSEE v. JAMES WALTER MORGAN**

**Appeal from the Criminal Court for Hamblen County**
**No. 14-CR-318    Alex E. Pearson, Judge by Interchange**

**No.  E2015-01959-CCA-R3-CD – Filed September 27, 2016**

The Defendant, James Walter Morgan, was found guilty by a Hamblen County Criminal Court jury of theft of property valued at $500 or less, a Class A misdemeanor.  *See* T.C.A. § 39-14-103 (2014).  The trial court sentenced the Defendant to eleven months, twenty-nine days of supervised probation.  On appeal, the Defendant contends that the trial court erred in denying his request for judicial diversion.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Jonathan M. Holcomb, Morristown, Tennessee, for the appellant, James Walter Morgan.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Dan E. Armstrong, District Attorney General; and Connie G. Trobaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the Defendant's refusal to return Gervasio Monterosas Sanchez's stolen truck to the place from which the Defendant towed it unless the victim paid him a sum of money, as well as from the Defendant's having the truck declared abandoned and selling it to another person.

At the trial, Morristown Police Detective Al Herrera testified that in August 2013, he was investigating reports of several stolen vehicles, including the victim's 1994 Chevrolet Silverado truck.  The victim reported that his truck had been towed without his

permission, and Detective Herrera said that the police department had not ordered the truck towed. The Defendant, who owned a towing company, approached the police and told them that Casey Wise had asked him to tow several vehicles, that Mr. Wise had not paid the Defendant for the towing service, and that the Defendant purchased the vehicles from Mr. Wise for $200 to $500 cash per vehicle. The Defendant became aware the vehicles were stolen, and Detective Herrera stated that the Defendant "knew better than [to] be towing vehicles." Mr. Wise never had physical possession of the victim's truck. Mr. Wise admitted to the police that he told the Defendant to tow the vehicles, and Mr. Wise was charged with three counts of theft of property. Mr. Wise pleaded guilty on September 18, 2013, to one count of theft.

On August 29, 2013, Detective Herrera spoke to the Defendant. Detective Herrera told the Defendant to return the victim's truck, and the Defendant agreed to comply. Detective Herrera did not retrieve the truck or ask the Defendant to take the truck to the police impound lot because the truck was not needed as evidence due to Mr. Wise's guilty plea and because Detective Herrera trusted the Defendant to return the truck. Detective Herrera had known the Defendant for a long time, and the Defendant had performed work for the police department as a city vendor. On August 20, Detective Herrera made a "recovery report" for the truck. Detective Herrera saw the truck in the Defendant's lot around October 10 and said the truck appeared to be in good condition.

Detective Herrera testified that the victim reported the value of his truck at $4000, that Detective Herrera had the same type of truck, and that Detective Herrera's truck had a similar value. The victim changed addresses several times but always maintained contact with Detective Herrera.

Detective Herrera testified that the victim contacted him after Detective Herrera's conversation with the Defendant and that the victim told him the Defendant had not returned the truck. The victim could not drive the truck because it needed a new battery. Detective Herrera spoke to the Defendant about the truck several times and "figured [the Defendant] would do the right thing." Detective Herrera knew the Defendant's wife had medical issues and was receiving out-of-state treatment and said he wanted to give the Defendant the "benefit of the doubt" and time to return the truck. Detective Herrera spoke to the Defendant in October 2013 and asked him to contact the District Attorney's Office to arrange the truck's return. The Defendant told Detective Herrera that he had "some paperwork" relative to the truck. After Detective Herrera filed charges against the Defendant, Detective Herrera discovered that the truck had been declared abandoned and that the Defendant had sent certified letters to the victim regarding the truck. Detective Herrera said, though, that the papers did not affect his decision to charge the Defendant and that he would not have charged the Defendant if the Defendant had returned the truck to the victim.

On cross-examination, Detective Herrera testified that the Defendant volunteered the information about Mr. Wise, that the Defendant came to the police station after the victim reported the truck stolen, and that the Defendant cooperated with the police, came to court, and assisted in the prosecution of Mr. Wise. Detective Herrera thought that as a city vendor the Defendant would hold the truck for the police until Mr. Wise's case was resolved. Detective Herrera acknowledged that although Mr. Wise intended to plead guilty, the victim's truck could have been held as evidence in the event Mr. Wise decided to proceed to trial. He said, though, he believed Mr. Wise would ultimately enter a guilty plea. Detective Herrera did not accompany the victim to collect the truck and conceded he should have ordered the Defendant to bring the truck to the police impound lot. Detective Herrera acknowledged that the Defendant would have given the victim the truck but for the victim's not wanting to pay the Defendant. The victim's police report reflected that the truck had not been operable for eight months before the theft. Detective Herrera acknowledged that he could have charged the Defendant with theft when Mr. Wise was charged. Detective Herrera said that the victim could have kept the truck for the police as evidence and that the Defendant paid Mr. Wise for the truck.

The victim testified through a translator that he came to the United States in 2003, that he bought the truck around 2008 for $4700, and that the truck was stolen on August 19, 2013. The title to the truck bearing the victim's name was received as an exhibit. On August 19, the victim left his apartment to pick up his children from school, and the truck was gone when he returned around 4:45 p.m. A neighbor told the victim that a red wrecker towed the truck, and the victim called the police to report the truck stolen. The victim said the truck was in good condition other than needing a new battery. The victim was in the process of moving at that time, and the truck contained clothing, the victim's daughter's possessions, dishes, tools, and a washer and dryer. The victim spoke to Detective Herrera when he completed the police report and at Mr. Wise's August 29 court hearing. Detective Herrera told the victim that he had spoken to the person who towed the victim's truck and that the victim should go to the towing company at 8 a.m. the following day to retrieve the truck.

The victim testified that he went to the Defendant's towing company the next morning with his daughter, who acted as his interpreter. The Defendant refused to give the truck to the victim. On a subsequent visit, the Defendant told the victim he would call the police if the victim bothered him again. The victim's truck was never returned, and the victim was not paid for the truck. The victim denied having received letters from the Defendant or having seen a newspaper advertisement about his truck.

The victim testified that he communicated his new addresses to the trial court and to Detective Herrera. The victim did not give his contact information to the Defendant. The victim valued his truck at $4000.

On cross-examination, the victim testified that although he said in a previous hearing that the truck was drivable, the truck was operational but needed a new battery. The victim was unable to drive at the time the truck was stolen because of a recent medical procedure. The victim did not take a tow truck or battery charger with him when he went to pick up the truck. Detective Herrera told the victim that the Defendant would return the truck to the victim's apartment. The victim did not ask Detective Herrera to accompany him to the Defendant's lot. Detective Herrera offered to show the Defendant where to leave the truck, but the victim told Detective Herrera to have the Defendant return the truck to the place where the Defendant had taken it. The victim visited the Defendant's towing company twice, once when the Defendant was not present, and once on August 30. The victim asked the Defendant to tow the truck to the place where the Defendant took it or to the victim's daughter's address. The victim received mail at his address, and he never received or refused to sign for a certified letter.

Morristown Police Officer Michael Voccola testified that he created the recovery report relative to the victim's truck. Officer Voccola said that he visited the Defendant's towing company on August 20, 2013, that the Defendant told him that he bought the truck from Mr. Wise, that Mr. Wise asked him to take the truck to a scrap yard, and that the truck was at Barnes Recycling.

Morristown Police Detective Mark McElhaney testified that on August 19, 2013, he assisted patrol officers in investigating several stolen vehicles. He read the written statement he took from the Defendant into the record. The Defendant described several interactions with Mr. Wise and another man, both of whom worked at Barnes Recycling, in which the men called the Defendant about junk vehicles that needed to be towed. The Defendant towed the vehicles, and the men later approached the Defendant about selling the vehicles for cash to third parties. Relative to the victim's truck, the statement said,

> Casey [Wise] called me Monday afternoon [August 19] and sold me the truck on Liberty Hill Rd. and we agreed on $275.00. Casey came to my garage about 04:00 pm before I picked up the truck. I gave [Mr. Wise] the Money and got a receipt. I then went and picked up the truck at Liberty Hill Rd. and took it back to my lot.

Detective McElhaney said the Defendant was a witness, not a suspect. The Defendant did not show Detective McElhaney title documents for the vehicles the Defendant purchased from Mr. Wise, and Detective McElhaney did not remember the Defendant's saying he had seen title documents before purchasing the vehicles.

On cross-examination, Detective McElhaney testified that the Defendant showed him the receipts the Defendant gave Mr. Wise. Detective Herrera was assigned any necessary follow-up investigation. The Defendant told Detective McElhaney that the

-4-

victim's truck had been sold, but Detective McElhaney became aware later that the truck had not been sold and was parked on the Defendant's lot.

Leticia Monterosas, the victim's daughter, testified that she went with the victim to speak to the Defendant on August 30, 2013, and that she interpreted the conversation. She saw the victim's truck parked on the Defendant's lot. The victim gave the Defendant two addresses to which he could take the truck. The Defendant asked the victim to show him the title to the truck, and when the victim did so, the Defendant laughed, did not believe them, and said he would take the truck back to the victim's apartment for $400, to be paid with a $200 deposit and the remainder when the towing was complete. The Defendant told them that if they returned, he would call the police. The victim and Ms. Monterosas did not return. She later said, though, that the victim may have gone back to the lot on another occasion.

On cross-examination, Ms. Monterosas testified that they only spoke to the Defendant once, that the truck was not functional at that time, and that something was wrong with the tire. The Defendant did not tell them to call Detective Herrera. Detective Herrera did not offer to accompany them, and the victim told Ms. Monterosas that if Detective Herrera did not want to accompany them to the Defendant's lot, they could not force the detective to accompany them.

Alfredo Monterosas, the victim's son, testified that he lived with the victim in October 2013, that he gave the victim the mail daily, and that the victim did not receive a certified letter or notice of a certified letter. Mr. Monterosas was with the victim when he bought the truck for about $4500, and Mr. Monterosas drove the truck to school. Mr. Monterosas said that the truck's brake caliper needed repairing and that the truck had been parked for six to eight months. The truck contained Ms. Monterosas's washer and dryer, two coffee tables, and some clothes from yard sales. Mr. Monterosas did not know how much the truck was worth when it was stolen.

Hamblen County Chief Deputy Clerk Penny Petty testified that she oversaw the office governing vehicle titles and registration. She identified paperwork the Defendant submitted to the clerk's office. Ms. Petty identified a September 3, 2013 towing bill, which stated the Defendant had towed the truck at the request of the owner, "Steve Mayes," who was the Defendant's employee. The Defendant submitted a September 4, 2013 request to verify the owner of the victim's truck. A September 19, 2013 response from the State reflected the victim was the truck's owner. Ms. Petty identified a piece of certified mail postmarked September 19, 2013, which was addressed to the victim and was stamped "return to sender" and "unable to forward." She noted it did not read "refused." She said that declaring a vehicle abandoned required sending the previous owner a certified letter. Ms. Petty identified an October 9, 2013 notice published in the newspaper that included the victim's truck in a list of vehicles to be sold at auction. Ms.

Petty identified a January 14, 2014 application to have a vehicle declared abandoned, which she said was usually completed by a person seeking to acquire title to a vehicle. Ms. Petty identified a January 15, 2014 application to acquire the title to the victim's truck. Ms. Petty identified documents showing the truck had been sold to another person on September 10, 2014, for $400. Ms. Petty said that the Defendant followed the legal procedure to acquire the title to the truck and that the certified letter was sent to the address reflected on the victim's state records.

The Defendant testified that he was sixty-five years old and had never been convicted of a crime other than traffic violations. He owned a towing company that consisted of a single tow truck and had not been a city vendor for twenty years. Greg Calloway, who worked for Barnes Recycling Service in Dandridge, called the Defendant and told him Mr. Calloway had a junk vehicle to sell. Barnes Recycling purchased vehicles located far from Dandridge and would generally call the Defendant if a vehicle were located in Morristown. The Defendant would pay for a vehicle and obtain a receipt from the owner, and he would tow the vehicle to Barnes Recycling, where he would be reimbursed for the cost of the vehicle and paid for the towing service.

The Defendant testified that the first time Mr. Wise asked the Defendant to tow a car, Mr. Wise purported to be the owner of a car that had been parked in front of an abandoned house for several years. The Defendant said that Mr. Wise came to his office and asked the Defendant to tow the car and that the Defendant copied Mr. Wise's identification and made a receipt for Mr. Wise. The Defendant later towed the car. The Defendant described similar transactions with Mr. Wise involving several other vehicles, only one of which was not stolen. The Defendant agreed to purchase the victim's truck for $275 to $300 on August 19. The Defendant eventually sold the truck to a man for $500.

The Defendant learned that the vehicles he towed for Mr. Wise had been stolen when he towed his neighbor's car for Mr. Wise. The Defendant and his neighbor discussed the car, and the neighbor denied having sold it. The Defendant immediately called the police, and as the Defendant spoke to the police, Mr. Wise called him again. Mr. Wise agreed to meet the Defendant at his lot, and the police arrested Mr. Wise there. After Mr. Wise was arrested, the Defendant went to the police department, made a statement about the vehicles he towed, and showed the police the receipts. The Defendant said that he was never compensated for the money he paid Mr. Wise or for the towing fee.

After it was revealed that the vehicles had been stolen, the Defendant bought the victim's truck back from the man who had purchased it and towed it back to his lot. On the way to his lot, the Defendant saw Detective Ron Sargent and asked the detective where the Defendant should take the truck. The Defendant said that Detective Sargent

"wasn't aware that was one of the [stolen] vehicles," made a telephone call, and told the Defendant to take the truck to the Defendant's lot.

The Defendant said that the truck's fuel pump was broken, that some of the tires were flat, that the battery was missing, and that the truck was full of old clothing. The Defendant valued the truck at about $500.

The Defendant received a subpoena for Mr. Wise's court hearing, and after court, Detective Herrera called him and said that the victim had come to pick up the truck at the Defendant's lot while the Defendant was in court. The Defendant said that his employee spoke to the victim, that the employee did not know the circumstances of how the truck came to the lot, that generally, if a vehicle stayed at the lot for a certain number of days, he charged a storage fee, and that the employee asked the victim for $400 in storage fees. Detective Herrera asked if the Defendant could "work with" the victim, and the Defendant told Detective Herrera to have the victim come to the lot the following morning.

The victim came to the Defendant's lot the following morning with the truck's title, but the Defendant said the victim had no identification. The victim told the Defendant to have Mr. Wise pay the bill, the Defendant suggested the victim's paying $100 to cover the towing, and the victim left. The Defendant denied threatening to call the police if the victim returned. The Defendant spoke to two police officers and to Detective Herrera about the truck and told them that the victim would have to retrieve the truck because the Defendant would not continue to store it. The police never ordered the Defendant to turn the truck over to the victim. The Defendant never told Detective Herrera that Detective Herrera could not take the truck, and Detective Herrera never attempted to retrieve the truck. The police never attempted to take the truck to their impound lot.

Detective Herrera visited the Defendant on a Tuesday in August 2013 and told him that the District Attorney wanted the Defendant charged and that the Defendant needed to call the District Attorney's Office. When the Defendant called the District Attorney, he did not know to what Detective Herrera referred.

The Defendant testified that he waited months before filing to have the truck declared abandoned. He said that he did everything the police asked him to do and that he completed all the paperwork necessary to obtain the truck's title. No one attempted to stop him. The Defendant sold the truck in late December 2013 or early January 2014. He sent the title transfer paperwork to his attorney and left Detective Herrera a voicemail message stating that the detective was welcome to pick up a copy of the paperwork.

On cross-examination, the Defendant testified that he bought five vehicles from Mr. Wise, three of which were stolen. He did not see the titles for any of the vehicles, although he saw a receipt for one vehicle. He towed one of the vehicles for Barnes Recycling and bought three others. The Defendant reiterated that his employee asked the victim for $400 and that the Defendant asked the victim for $100. The Defendant did not recall whether the victim showed him the truck's title. The Defendant denied telling the victim to leave the lot and said that he did not stop the victim from taking the truck. The Defendant said that Detective Sargent had accompanied Detective Herrera on a previous occasion and that the Defendant spoke to Detective Sargent because he saw him on the way back from retrieving the victim's truck. The Defendant said that originally, his employee Mr. Mayes sold the victim's truck to Mr. Mayes's neighbor for $500 and that Mr. Mayes signed the tow ticket. The Defendant stated that the police asked him to recover the truck and that he did not return the truck to the victim's apartment because Detective Sargent told him to take it to his lot.

The Defendant acknowledged that he towed the victim's truck on August 19, 2013, that he towed the truck again on September 3, 2013, that he inquired with the State as to its ownership on September 4, 2013, that the State responded on September 19, 2013, and that the Defendant sent the certified letter to the victim the same day.

The Defendant denied that Detective Herrera asked him to return the victim's truck and called Detective Herrera a liar. The Defendant said that Detective Herrera did not tell him he could not charge the victim and only asked the Defendant if he could work with the victim. The Defendant said if the victim had wanted to take the truck without paying, the Defendant would not have stopped him. The Defendant stated that if he towed the truck somewhere, he expected to be paid and that he "had already towed it for the City of Morristown for nothing." The Defendant denied telling Officer Voccola that the victim's truck was at the "crusher" and said he told Officer Voccola the truck had been sold.

The Defendant acknowledged the newspaper notice only listed the year, make of the truck, and the Vehicle Identification Number (VIN). The Defendant knew the victim did not speak English. He said the State required a published notice within thirty days of a vehicle's being towed. He acknowledged that he knew the truck belonged to the victim. The Defendant said that the victim came to Mr. Wise's court hearing but denied that Detective Herrera spoke to the Defendant with the victim present after court. The Defendant left court before the hearing was finished.

On redirect examination, the Defendant testified that the statutory procedure for having a car declared abandoned was the same regardless of the language the car's owner spoke. He never signed the statement Officer Voccola prepared.

On rebuttal, Detective Herrera testified that he talked to the Defendant on the steps of the courthouse after court adjourned. He said that he told the Defendant to return the truck to the victim and denied that he told the Defendant to work with the victim. He said that he told the Defendant to return the truck twice in person and several times on the telephone, including September 14, September 24, and October 10. Detective Herrera said that during the time in which, according to the Defendant's testimony, the victim visited the towing company the first time and spoke to the Defendant's employee, the victim was in court. The Defendant's neighbor delivered the abandonment paperwork to the police department after the Defendant had been charged. Detective Herrera denied that the Defendant had called him about the paperwork being at his attorney's office. Detective Herrera was not aware of Detective Sargent's telling the Defendant to store the truck at his lot.

On cross-examination, Detective Herrera acknowledged that the Defendant said he would be happy to return the truck each time Detective Herrera told the Defendant to return it. He denied the Defendant told him the truck needed to be removed from his lot. Detective Herrera said that every time the victim tried to retrieve the truck, the Defendant "extorted" the victim and that the victim had no means to retrieve the truck by himself. Detective Herrera thought the Defendant had an obligation to return the truck to the place from where he took it. When asked whether the police department had an obligation to return evidence to its owner, Detective Herrera said that the truck was not needed as evidence after Mr. Wise pleaded guilty, that the Defendant was in possession of stolen property and had an obligation to return it, and that the Defendant was not in charge of evidence for the city. To Detective Herrera's knowledge, no one from the city or the police department asked the Defendant to store the truck.

Upon this evidence, the jury convicted the Defendant of misdemeanor theft. At the sentencing hearing, the trial court noted that the Defendant's presentence report reflected no prior convictions other than speeding tickets, that the Tennessee Bureau of Investigation (TBI) verified the Defendant had not received diversion previously, that the Defendant did not have a previous disqualifying conviction, and that a previous arrest had been resolved without a conviction. Relative to confinement, the court found that the testimony at trial established that the Defendant purchased vehicles from Mr. Wise in a very short period of time, that the Defendant spoke to one of the owners of the vehicles and realized "he was not legitimately buying those vehicles," and that the Defendant contacted the police, gave a statement, and came to court to testify against Mr. Wise. The court concluded,

> Based on the facts and evidence introduced at trial, the Court is of the opinion that this is not an appropriate case for a judicial diversion. However, the Court is also mindful of the fact that the jury in its note out to the Court that they didn't want to see the defendant incarcerated, I don't

think that incarceration would serve as a deterrent to Mr. Morgan any more than probation would. I don't think that incarceration or the unique facts of this particular case would serve as a deterrent any more for anybody else. It is a unique case.

The trial court sentenced the Defendant to eleven months and twenty-nine days' supervised probation and ordered the Defendant to pay the victim $500 restitution.

At the motion for a new trial hearing, relative to the denial of judicial diversion, the trial court found relative to deterrence that the Defendant's testimony about a flexible fee was not credible and that the denial of diversion was necessary to deter the Defendant and others from similar behavior. Relative to the failure to accept responsibility for the crime, the court found that the Defendant "continues to insist . . . that he hasn't committed a crime, which the Court does not accept[.]" Relative to the nature of the offense, the court found that the offense was "particularly suited" for denying diversion because the Defendant misused the law when he applied to have the truck declared abandoned. The court denied the motion for a new trial, and this appeal followed.

The Defendant contends that the trial court erred in denying judicial diversion. He argues that the court did not consider the appropriate factors and did not articulate its reasoning on the record. The State responds that the court properly denied diversion and that although the court did not articulate its reasoning at the sentencing hearing, the court set out detailed findings at the motion for a new trial hearing.

A trial court may order judicial diversion for certain qualified defendants who are found guilty of or plead guilty or nolo contendere to a Class C, D, or E felony or a lesser crime; have not previously been convicted of a felony or a Class A misdemeanor; and are not seeking deferral for a sexual offense. *See* T.C.A. § 40-35-313(a)(1)(B)(i) (Supp. 2013) (amended 2014). The grant or denial of judicial diversion is within the discretion of the trial court. *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014) (citing T.C.A. § 40-35-313(a)(1)(A)). When considering whether to grant judicial diversion, a trial court must consider (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's physical and mental health, (6) the deterrence value to the defendant and others, and (7) whether judicial diversion will serve the ends of justice. *State v. Electroplating*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); *see King*, 432 S.W.3d at 326 (stating that recent caselaw affecting the standard of review for sentencing determinations "did not abrogate the requirements set forth in *Parker* and *Electroplating*, which are essential considerations for judicial diversion"). "The record must reflect that the court has weighed all of the factors in reaching its determination." *Electroplating*, 990 S.W.2d at 229. "In reaching its decision, the trial court is not required to recite on the record all of

-10-

the . . . factors; however, the record should reflect that the trial court considered all of the factors in rendering its decision and that it 'identified the specific factors applicable to the case before it.'" *State v. Dycus*, 456 S.W.3d 918, 930 (Tenn. 2015) (citing *King*, 432 S.W.3d at 327).

If a trial court refuses to grant judicial diversion, "[T]he court should clearly articulate and place in the record the specific reasons for its determinations." *Parker*, 932 S.W.2d at 958-59. "The truthfulness of a defendant, or lack thereof, is a permissible factor for a trial judge to consider in ruling on a petition for suspended sentence." *State v. Neeley*, 678 S.W.2d 48, 49 (Tenn. 1984)

On review of a decision to grant or deny judicial diversion, this court will apply a presumption of reasonableness if the record reflects that the trial court considered the *Parker* and *Electroplating* factors, specifically identified the relevant factors, and placed on the record the reasons for granting or denying judicial diversion, provided any substantial evidence exists to support the court's decision. *King*, 432 S.W.3d at 327. If, however, the trial court failed to weigh and consider the relevant factors, this court may conduct a de novo review or remand the case for reconsideration. *Id.* at 328.

At the sentencing hearing, the trial court failed to articulate that it had considered the relevant factors or its reasoning in denying diversion. However, at the motion for a new trial hearing, the court set out its reasoning in detail. The record as a whole reflects that the court considered the appropriate factors and denied diversion due to the nature of the offense, the Defendant's misuse of the abandonment statute, the need to deter the Defendant and others from similar behavior, and the Defendant's failing to accept responsibility for the offense. We note that at the sentencing hearing, the court discussed the Defendant's lack of a criminal record in the context of eligibility for diversion. We conclude that the court placed sufficient findings on the record to apply a presumption of reasonableness.

The Defendant has not presented evidence that the trial court abused its discretion in denying diversion, and the record contains substantial evidence to support the denial. Although the Defendant had no prior convictions, the circumstances of the offense and the Defendant's reaction to the charges were of particular concern to the court. The court found that, after the Defendant discovered he was unwittingly part of a theft operation, he failed to return the stolen property and attempted to maintain control of the truck until the victim paid a fee, which the victim was not obligated to pay because the Defendant unlawfully took the victim's truck without the victim's consent. The Defendant showed a lack of remorse or awareness that his actions constituted a criminal offense. We note the Defendant's pretrial October 2, 2014 statement in a questionnaire that "I followed TN law on abandoned cars." Although the presentence report is not included in the record, the court found the Defendant "continue[d] to insist" through trial counsel that he had not

committed a crime. The court found that denial of diversion was necessary to deter the Defendant from similar behavior in the future. The Defendant has not overcome the presumption of reasonableness, and he is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE