IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 27, 2022 Session

## STATE OF TENNESSEE v. JASON ALBERT HAYES

**Appeal from the Criminal Court for Knox County**
**No. 119273   G. Scott Green, Judge**

_____

**No. E2021-01123-CCA-R3-CD**

_____

Jason Albert Hayes, Defendant, was charged with aggravated assault, resisting arrest, and assault. He pled guilty in exchange for an effective sentence of three years. After the denial of judicial diversion, Defendant appeals. Because the trial court did not abuse its discretion, we affirm the denial of judicial diversion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and J. ROSS DYER, JJ., joined.

Eric Lutton, Public Defender; Jonathan Harwell, Assistant Public Defender, for the appellant, Jason Albert Hayes.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Joe Welker, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Defendant was charged via information with one count of aggravated assault, one count of assault, and one count of resisting arrest for events that took place on June 15, 2021. Defendant waived indictment. Defendant expressed his desire to plead guilty to the charges in exchange for an effective sentence of three years with the manner of service of the sentence to be determined by the trial court at a sentencing hearing. Counsel for Defendant indicated that Defendant intended to apply for judicial diversion. At the guilty

plea hearing, counsel for the State informed the trial court that had this matter proceeded to trial, the proof would have shown:

[O]n June 15th of [2021] around 3:30, 3:45 in the morning at [] Snyder School Road in Knox County, officers with the county and the city arrived at that location, and upon investigation they noticed that the garage door was open and the lights were on at the residence.

Officers knocked on the interior garage door of the residence and [Defendant] then stated that he had assaulted his wife and needed to go to jail.

They then asked [Defendant] to step out in the garage and speak with them. Then [Defendant] started reaching toward [a] table with several unknown objects on it. [Defendant] was told not to reach towards that table. He became agitated and started to threaten officers. [Defendant] took an aggressive stance and reached for Officer Davis.

Officer Davis grabbed [Defendant] and they were able to take him to the ground and gain control. [Defendant] grabbed officer Davis's outer carrier vest and Officer Kidwell's arm and refused to let go. [Defendant] was using his legs in an attempt to resist officers by kicking and flailing while they tried to gain control of his arms.

Officers could not take control of [Defendant's] arms and delivered strikes to [Defendant's] face in an attempt to place him in handcuffs.

After he was placed in handcuffs [Defendant] was still attempting to strike the officers with his legs, kicking the officers in the right area. Then he was placed in leg restraints until the transportation van arrived.

The victim stated that she and [Defendant] had been drinking and [Defendant] started accusing her of having relations with [Defendant's] friend. [Defendant] then chased the victim out to the front yard and held her for approximately an hour restricting her ability to move or leave. The victim pretended to lose consciousness so [Defendant] would stop strangling her. The ambulance arrived and stated the victim suffered from a broken orbital bone from that altercation. All these events happened here in Knox County.

The trial court accepted the guilty plea.

At a sentencing hearing on September 2, 2021, the State introduced the presentence report into evidence. According to the presentence report, Defendant was 46 years old. Defendant's statement noted that he was "humbled" by the charges and that he intended to enter a program at Cornerstone to address his alcohol issues and participate in therapy to address his "core issues that brought this situation to being."

Defendant's prior record included convictions for resisting arrest, criminal trespass, and two violations for "license to be carried/exhibited on demand." All of these convictions were from 1996 and 1997. Defendant graduated with an associate's degree in applied science in 1999. Defendant reported that he had bipolar and post-traumatic stress disorder for which he took medication. Defendant also reported a suicide attempt in 2020. Defendant first consumed alcohol at the age of 17 and admitted that he had an average of eight drinks per day. Defendant reported that he used marijuana weekly starting at age 17 and that he had used cocaine one time and LSD 10 times. Defendant reported a sporadic work history in several restaurants and as a pool cleaner. Defendant's risks/needs assessment was listed as "high violent."

Although unsworn, Defendant informed the trial court that he "developed a drinking problem" that led to the "violence that happened." Defendant expressed his desire to "take care of the alcoholism right away" and reported that he had secured a bed at Cornerstone.

The trial court commented that it reviewed the investigation report and the *Parker* and *Electroplating* factors to consider whether Defendant was "an appropriate candidate for judicial diversion." The trial court stated that Defendant was not an appropriate candidate for judicial diversion because "a couple [of the factors] jump out." The trial court noted the "facts of the offense" combined with Defendant's "crime history" and use of "illicit narcotics, specifically marijuana" influenced its decision to deny judicial diversion. The trial court relied on Defendant's own admission that he used marijuana "up to twice a week" from the time he was "17 or 18 years old up and through June of 2021." As a result of those particular factors weighing against diversion, the trial court denied diversion. The trial court sentenced Defendant to three years for aggravated assault, 11 months and 29 days for assault, and three months for resisting arrest. The trial court suspended the sentence to time served and placed Defendant on probation for the duration of the three-year sentence. The trial court ordered Defendant to abstain from alcohol "in any amount" during his probationary sentence.

Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant insists that the trial court abused its discretion in denying diversion for a number of different reasons. First, Defendant complains that there is no indication that the trial court considered all of the diversion factors. Defendant also complains that the trial court failed to weigh the factors against each other to determine whether they supported or weighed against the denial of diversion. Defendant also complains that the trial court improperly relied on the facts of the case without considering whether they went beyond the elements of the offenses and erred in relying on Defendant's prior criminal history in denying diversion. Lastly, Defendant takes issue with the fact that the trial court relied on Defendant's admission of drug use in the presentence report, violating his right against self-incrimination. The State argues that the trial court's decision was reasonable and supported by substantial evidence showing the circumstances of the offense and Defendant's amenability to correction, criminal record, social history, and physical and mental health all weighed against a grant of diversion.

Judicial diversion is a "legislative largess" granted to certain qualified defendants whereby the judgment of guilt is deferred and the defendant is placed on probation. *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014); *see* T.C.A. § 40-35-313(a)(1)(A). If the defendant is successful in completing the probation assigned as part of diversion, the charges will be dismissed and the defendant may seek expungement. T.C.A. § 40-35-313(a)(2), (b). Violation of the probation imposed as a condition of diversion may result in an adjudication of guilt and imposition of a sentence. *King*, 432 S.W.3d at 323; T.C.A. § 40-35-313(a)(2). "There is no presumption that a defendant is a favorable candidate for judicial diversion." *State v. Dycus*, 456 S.W.3d 918, 929 (Tenn. 2015)

Like other sentencing decisions, the decision to grant or deny diversion is reviewed for an abuse of discretion. *King*, 432 S.W.3d at 324-25. "Reviewing courts will find an abuse of discretion only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008). Although the deferential standard of review articulated in *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012), applies to the decision to grant or deny diversion, the common law factors which the trial court has long been required to consider in its decision have not been abrogated. *King*, 432 S.W.3d at 326. Accordingly, in determining whether judicial diversion is appropriate, a trial court must consider:

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused.

- 4 -

*State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996) (footnote omitted). In addition to considering these factors, the trial court must weigh them against one another and place an explanation of its ruling on the record. *King*, 432 S.W.3d at 326 (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

If the trial court has adhered to these requirements, the reviewing court merely looks to see whether "any substantial evidence" exists in the record to support the trial court's decision. *Id.* "Under the *Bise* standard of review, when the trial court considers the *Parker* and *Electroplating* factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," this Court must apply a presumption of reasonableness and uphold the trial court's decision so long as there is any substantial evidence to support the decision. *King*, 432 S.W.3d. at 327. The trial court need not "recite" all of the factors, but the record must reflect that it considered each factor, identified the specific factors applicable to the case, and addressed the relevant factors. *Id.* "'[A] trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration.'" *State v. Walter Townsend*, No. W2015-02415-CCA-R3-CD, 2017 WL 1380002, at *2 (Tenn. Crim. App. Apr. 13, 2017) (quoting *State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997)), *no perm. app. filed*.

The trial court considered Defendant's his criminal record, his social history including his drug use, and found that those factors weighed against diversion. Moreover, the court also found that the circumstances of the offense, which included holding his girlfriend down for an extended period of time while choking and headbutting her, weighed against diversion. When the police arrived, Defendant told them he needed to go to jail but proceeded to fight and resist the officers.

Defendant asserts that the court's determination regarding the seriousness of the offense required the trial court to apply the heightened standard of *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006). *See State v. Shapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (noting that the heightened standard in *Trotter* applies only when the circumstances of the offense are the sole basis for a denial of probation). We disagree. The trial court did not base the denial of judicial diversion solely on the circumstances of the offense.

Defendant also argues that the trial court's reliance on Defendant's drug use violated his privilege against self-incrimination and *Miranda*. Defendant did not raise either of these issues in the trial court, instead raising them for the first time on appeal. These issues are waived. *State v. Turner*, 919 S.W.2d 346, 356-57 (Tenn. Crim. App. 1995) (holding that issues raised for the first time on appeal are waived). In any event, it is entirely appropriate for the trial court to consider drug use when determining whether to grant

judicial diversion.  A defendant's social history includes drug use.  *See State v. Lashay Nicole Scruggs*, No. W2014-00091-CCA-R3-CD, 2014 WL 7432587, at *6 (Tenn. Crim. App. Dec. 30, 2014), *no perm. app. filed*.

While not explicit, the record indicates that the trial court considered and weighed each of the appropriate factors prior to denying judicial diversion.  While we acknowledge as a positive factor Defendant's admission of guilt and willingness to address his alcohol issues, we cannot conclude that the trial court abused its discretion.  Defendant is not entitled to relief.

## *Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE