IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 19, 2024

**STATE OF TENNESSEE v. JOSEPH SAKAI HALL**

**Appeal from the Criminal Court for Davidson County**
**No. 2022-D-2141    Angelita Blackshear Dalton, Judge**

_____

**No. M2024-00254-CCA-R3-CD**
_____

Pursuant to a negotiated plea agreement, Defendant, Joseph Sakai Hall, pleaded guilty in the Davidson County Criminal Court to one count of aggravated assault involving serious bodily injury, a Class C felony, and received a sentence of three to four years as a Range I offender with the trial court to determine the length and manner of service and whether to grant Defendant's request for judicial diversion.  Following a sentencing hearing, the trial court denied Defendant's request for diversion and sentenced him to four years with 180 days to serve and the remainder to be supervised on probation.  After a careful review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT H. MONTGOMERY, JR., JJ., joined.

Martesha L. Johnson, District Public Defender; Will Allensworth (on appeal) and Sean Dowling (at sentencing), Assistant District Public Defenders, Nashville, Tennessee, for the appellant, Joseph Sakai Hall.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Matthew Thomas, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Plea and Sentencing Hearing*

The State gave the following factual basis for Defendant's guilty plea:

[H]ad this matter gone to trial, the State's witnesses would have been available[,] and the proof would have shown that on April [] 14[], 2022, at approximately 2:00 [a.m.], officers were dispatched to [an address on] Arbor Ridge Road regarding a domestic disturbance.

Upon arrival, officers made contact with the Nashville Fire Department who advised them that the victim was in the ambulance. The fire department reported to officers that when they arrived on scene, [D]efendant told them he ["]beat the f[***] out of her,["] meaning the victim. The victim had multiple injuries to her head. She had a large laceration to the back of her head[] and blood all over her face.

The victim's face was swollen to the point where her eyes were swollen shut. Officers attempted to talk to the victim about what happened, but she would not give them any information. She reported losing consciousness but was unsure for how long. The victim refused all services from MNPD and NFD. When officers escorted the victim back to her apartment, she stated he, [D]efendant, did it.

Upon entering the residence, officers observed large amounts of blood all over the apartment. Based off of those facts that occurred here in Davidson County, the State would recommend the previously-announced disposition.

At the subsequent sentencing hearing, the presentence investigation report was admitted. The report showed that Defendant was 26 years old and a high school graduate. Defendant was employed by a temporary staffing agency. Defendant reported that he had used marijuana, that he had been diagnosed with anxiety and depression, and that he attempted suicide in 2023 using alcohol and drugs. Defendant had completed mental health and substance abuse treatment. Defendant described his family as a "loving and caring household not [de]void of problems but striving to work through them." A validated risk and needs assessment showed that Defendant had "a score of high violence in aggression and residential" and indicated that Defendant would benefit from an anger management program.

The State introduced the victim's medical records and photographs of the victim's injuries. The victim's mother testified that Defendant and the victim "began living together very shortly after they had started dating" in the fall of 2021. The victim's mother was aware "there had been violence in the relationship" and had seen "physical evidence of it." She testified, "there were at least ten times that I saw her with new physical injuries from

[Defendant]."  The injuries included "a black eye[,] . . . bruises all over her face and neck and arms[,] . . . bruises and scabs and cuts on her legs and her face[, and] bruises in the shape of handprints on her neck on multiple occasions."

The victim called her mother in the early morning hours on April 14, 2022, and told her that Defendant "beat [her] up real bad again."  When the victim's mother arrived at the victim's apartment, she saw blood on the stairs, the landing, and the door frame to the apartment.  Inside, "the apartment was destroyed.  There were holes in the wall.  There were broken dishes.  There was blood everywhere.  I mean, everywhere."  The victim's mother saw "handfuls" of the victim's hair on the floor, "bloody handprints along the baseboards[,]" "doors ripped off the hinges of the laundry room[,]" "a broken guitar," and "a knife jammed into the countertop."  She found the victim in her bedroom.  The victim was unable to open her eyes because they were swollen shut.  The victim's face was "beaten beyond recognition[,]" and she had trouble speaking.  The victim's mother took the victim to the hospital.

The victim's mother described the toll the victim's relationship with Defendant had taken on the victim.  She was "emotionally, completely shut down."  She would not discuss what happened to her, she startled easily, she would not let anyone touch her, she was "scared almost all the time[,]" and she was "abusing alcohol."  The victim's mother testified that she "[n]ever" saw any remorse from Defendant.

Defendant introduced a certificate of completion for a 26-week batterer's intervention program, a letter of completion from "Recovery Unplugged," a letter from "Centerstone" summarizing his treatment, and proof of his employment.  Defendant testified that on the day of the incident, he and the victim drank tequila and had a discussion "about philosophy."  Their discussion led to an argument, and Defendant made a comment that "made [the victim] really mad."  The victim threw an empty bottle of tequila at Defendant.  The two began "cussing each other out."  Defendant tried to calm down "the situation" and hug the victim.  The victim pushed him away and called him "crazy."  She locked herself in the bathroom, and Defendant told her, "Screw it.  I'm going to go and get cigarettes and more beer."  The victim then came out of the bathroom and threw Defendant's keys and phone off the balcony of the apartment.  Defendant said the victim repeatedly asked him, "What are you going to do?  What are you going to do?"  Defendant said he "snapped" and "punched her in the face three times."  In a "rage," Defendant destroyed his guitar, kicked in the closet door, and stabbed a knife into the kitchen counter.  Defendant then called the police and asked for an ambulance for the victim.

Since the incident, Defendant had sought counseling, started batterer's intervention, completed an intensive outpatient program, and attended some AA meetings.  Defendant said he learned that he was "completely responsible for [his] actions and what [he] d[id]."

Defendant testified that he felt "extremely remorseful" for what he did to the victim. He acknowledged that he caused her "trauma" that "affected her deeply."

Defendant testified about an incident on June 6, 2021, in which he "slapped [the victim] in the face." On cross-examination, Defendant admitted to other physical altercations with the victim. When asked when the next time he was physical with the victim after the slapping incident, Defendant responded, "Do you want me to give you the date? 'Cause I can't remember the f[***]ing date." He then testified, "I just told you we had physical altercations, like, a lot." He denied that it was daily but admitted that it happened multiple times a week. Defendant admitted that he had caused the victim to have bruises on her arms and face and black eyes, that he had hit her in the face with his fist, and that he had strangled her "multiple" times.

Defendant acknowledged he had a prior vandalism charge that was dismissed. The incident occurred when he was 18 years old. A neighbor went to his house to talk to his mother, who was sleeping, and Defendant "put [his] hands on the rails" to prevent her from knocking on the door. The neighbor began to record Defendant with her phone, and Defendant took her phone and threw it.

At the conclusion of the hearing, the trial court found that no mitigating factors applied, but the court applied one enhancement factor, finding that Defendant had a history of criminal behavior. T.C.A. § 40-35-114(1). The court stated that it "put a question mark next to" enhancement factors (5), that Defendant treated the victim with exceptional cruelty during the commission of the offense, and (10), that Defendant had no hesitation about committing a crime when the risk to human life was high. *See id*. at (5)(10). The court stated that it appreciated Defendant's candor in discussing prior incidents of abuse and his vandalism charge.

The trial court set the length of Defendant's sentence at four years. Regarding the manner of service, the court found that confinement was necessary to protect society by restraining a defendant who had a long history of criminal conduct and that confinement was necessary to avoid depreciating the seriousness of the offense. *See* T.C.A. § 40-35-103(1)(A)-(B). The court believed the "facts of this case very strongly highlight the application of" the latter consideration. The court considered the victim's injuries, the property damage caused by Defendant, the prior incidents of abuse, and the court determined, "it's very clear to me that a sentence of incarceration, of some period of incarceration is 100 percent necessary."

Regarding Defendant's request for judicial diversion, the trial court indicated that it "very sincerely appreciate[d]" Defendant's initiative in seeking treatment, but the court expressed "extreme[] concern[] for a number of things[,]" including the prior vandalism

and the prior assault against the victim, which indicate "a pattern of power and control issues." The court noted that Defendant "demonstrated from th[e] [witness] stand he ha[d] no control over his emotions." The court questioned Defendant's amenability to correction. The court expressed doubt that, despite Defendant's anger management classes, Defendant had "accepted the boundaries within which he has to operate." Finally, the court cited *State v. Parker*, 932 S.W.2d 945 (Tenn. Crim. App. 1996), and found that none of the factors "with regards to judicial diversion justify this [c]ourt placing [Defendant] on judicial diversion." The trial court denied judicial diversion and ordered that Defendant serve 180 days of his four-year sentence incarcerated before being released to supervised probation. Defendant appealed.

*Analysis*

On appeal, Defendant argues the trial court erred by denying his request for judicial diversion because it did not properly explain or weigh the applicable factors. Defendant suggests that this Court conduct a de novo review and grant his request for judicial diversion. The State argues that the record supports the trial court's denial of diversion.

We review a trial court's sentencing determinations for an abuse of discretion, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). As such, we will uphold a sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id*. at 709-10. This standard of appellate review applies to a trial court's decision to grant or deny judicial diversion. *See State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014).

Following a determination of guilt by plea or by trial, a trial court may, in its discretion, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt. T.C.A. § 40-35-313(a)(1)(A); *State v. Dycus*, 456 S.W.3d 918, 925 (Tenn. 2015). If the defendant successfully completes the period of probation, the trial court is required to dismiss the proceedings against him, and the defendant may have the records of the proceedings expunged. T.C.A. § 40-35-313(a)(2), (b); *Dycus*, 456 S.W.3d at 925.

To be eligible for judicial diversion, a defendant must be a "qualified defendant" as defined by statute. T.C.A. § 40-35-313(a)(1)(B)(i). Mere eligibility, however, does not entitle a defendant to judicial diversion. *Parker*, 932 S.W.2d at 958. In determining whether to grant diversion, the trial court must consider the following factors: (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental

health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused. *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *Parker*, 932 S.W.2d at 958.

A trial court should not deny judicial diversion without explaining the factors in support of its denial and how those factors outweigh other factors in favor of diversion. *King*, 432 S.W.3d at 326; *Electroplating*, 990 S.W.2d at 229. When the trial court considers the factors, "specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," then this Court will "apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *King*, 432 S.W.3d at 327. A trial court's failure to consider the factors results in a loss of the presumption of reasonableness, and this Court will either conduct a de novo review or remand the case to the trial court for reconsideration. *Id*. at 327-28.

Defendant contends that the trial court's "conclusory statement" that none of the *Parker* factors justified a grant of judicial diversion and its failure to "weigh the factors against each other" should result in the loss of a presumption of reasonableness to the trial court's ruling. The State argues that the trial court's denial of diversion is entitled to a presumption of reasonableness and that the record contains substantial evidence to support the trial court's decision. We agree with the State.

The trial court considered Defendant's amenability to correction, commending Defendant for having "t[aken] it upon himself to undergo treatment" to address his anger and mental health issues. However, the court expressed doubt based on Defendant's brutal assault of the victim after he completed anger management classes following his prior arrest for assault of the victim. The court noted that Defendant exhibited "power and control issues" and that he was unable to control his emotions during his testimony at the sentencing hearing.

The court considered the circumstances of the offense, emphasizing the severity of the victim's injuries and the property damage caused by Defendant in a fit of rage, including his plunging a knife into the counter and "bust[ing] his guitar." The court considered Defendant's history of criminal behavior and expressed its "extreme[] concern[] for a number of things[,]" including the "vandalism situation" with a neighbor at the age of 18 and the prior assaults against the victim.

Defendant's focus on the trial court's summary conclusion that "there are no factors under *State v. Parker* that . . . justify this [c]ourt placing [Defendant] on judicial diversion" overlooks the court's factual findings in support of its conclusion. While the trial court did

not articulate or analyze each factor in great detail, the record reflects that the court considered the relevant factors for diversion and explained its reasoning for denying diversion. *See State v. Moore*, No. E2014-01790-CCA-R3-CD, 2015 WL 4314107, at *4 (Tenn. Crim. App. July 15, 2015); *State v. Adinolfi*, No. E2013-01286-CCA-R3-CD, 2014 WL 2532335, at *4 (Tenn. Crim. App. June 2, 2014). We conclude that the record supports the trial court's denial of diversion. The trial court did not abuse its discretion. Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.


s/ Timothy L. Easter
TIMOTHY L. EASTER, JUDGE

- 7 -